Submitted April 25, affirmed July 20, 2011

In the Matter of D. L. W.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

D. L. W.,
*Appellant.*

Multnomah County Circuit Court
100666203; A145848

260 P3d 691

Rebecca Carter and Multnomah Defenders, Inc., filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Justice J. Rillera, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

After finding that appellant had a mental disorder, the trial court ordered her committed to the custody of the Mental Health Division for 180 days. ORS 426.130. She now appeals, arguing that the state did not meet its burden of proving by clear and convincing evidence that, because of her mental illness, she is a danger to others. ORS 426.307(6). We affirm.

Appellant requests that we review this case *de novo*. ORAP 5.40(8)(a). Appellant does not dispute the trial court's findings of historical fact; the only issue on appeal is legal, that is, whether those facts establish that appellant was a danger to others at the time of the hearing.[1] Our standard of review, therefore, is for legal error. *State v. D. R.*, 239 Or App 576, 583, 244 P3d 916 (2010).

In the months before the commitment hearing, appellant's housemate, Dix, had terminated their romantic relationship after 16 years together. Dix ended the relationship because of appellant's escalating violent behavior toward him in recent months. According to undisputed testimony from Dix, his daughters, appellant's neighbors, and a police officer who had had repeated contacts with appellant, the actual violence marked an escalation of earlier incidents in which appellant had made verbal threats. When a neighbor asked appellant to turn down her music, she refused and told the neighbor that she had better watch her back because, "somebody will slice your throat." She called a different neighbor at work approximately 30 times in one day, telling her to watch her back and threatening to kill her. Appellant told another neighbor, "I'm going to kill you, you bitch" and then pretended her hand was a gun and mimed shooting. Within the three months immediately before the hearing, appellant assaulted Dix on three separate occasions. She shoved him with both hands into the kitchen counter, with only the counter saving him from falling to the ground. Another incident took place while Dix was driving in a car with appellant and she punched him in his shoulder, leaving

---

[1] The court found that appellant would not voluntarily submit to treatment, ORS 426.130(1)(b)(A)(i), and that finding is not challenged on appeal.

bruises. She also threw a heavy metal object at him. In addition, at one point during an argument, appellant pretended she had a knife in her hand and acted out stabbing Dix in his stomach. In another incident, she charged at Dix while his daughter was present. Ultimately, Dix believed that appellant constituted such a danger to him that, in the week prior to the commitment hearing, he sought and was granted a restraining order against her that prohibited her from coming near him or his adult daughters.

Appellant's commitment occurred after the police officer who knew her from earlier contacts, Nederhiser, was called to appellant's residence to conduct a welfare check. He determined that he needed to take appellant to see a doctor. He based this decision on conversations he had had with neighbors about their exchanges with appellant and appellant's apparent physical deterioration since his first contact with her the previous March; she had lost a significant amount of weight and appeared distraught and angry. Appellant adamantly refused to go a doctor, and Nederhiser decided that he had to take her to a hospital for a "police hold." Appellant resisted; Nederhiser and another officer ultimately succeeded in putting appellant in their police car, but only after she threatened to kill all of the bystanders. A commitment hearing ensued. Both of the examiners agreed that appellant was mentally ill and that her mental illness caused her to be a danger to others. The court agreed as well.

To justify an involuntary civil mental commitment, the state must prove by clear and convincing evidence that a person is mentally ill and that, because of the illness, the person is a danger to self, a danger to others, or unable to meet the person's basic needs. ORS 426.005(1)(e). Evidence is clear and convincing "when the truth of the facts asserted is highly probable." *State v. Jayne*, 174 Or App 74, 77-78, 23 P3d 990, *rev den*, 332 Or 316 (2001). Given that standard, "Oregon's commitment statutes require more * * * than simply a finding of mental illness in the clinical sense." *State v. Lucas*, 31 Or App 947, 951, 571 P2d 1275 (1977); *see also State v. Woolridge*, 101 Or App 390, 394, 790 P2d 1192, *modified on recons*, 102 Or App 559, 794 P2d 1258 (1990) ("The existence of a mental disorder alone is insufficient to constitute mental

illness as defined by statute."). To affirm the trial court's decision, this court must conclude that the evidence presented to it is adequate to "form a foundation to predict future dangerousness." *State v. King*, 177 Or App 373, 377, 34 P3d 739 (2001). Whether a person is a danger to others "is determined by [her] condition at the time of the hearing as understood in the context of [her] history." *Id*. Mere verbal threats of violence made in the past are generally insufficient to establish danger to others. *Id.*; *see Woolridge*, 101 Or App at 394. However, if a mentally ill person has threatened others and has also carried out an overt violent act in the past against another person, those facts generally constitute clear and convincing evidence that the person is a danger to others. *King*, 177 Or App at 377.

" 'Fact matching' in these kinds of cases is often of little utility because every involuntary mental commitment case must be decided on its individual facts under the applicable standards." *Id.* at 378. The facts in this case consist of appellant's history of serious verbal threats, and an escalation in the frequency of her erratic, impulsive, and angry conduct, culminating in several recent violent acts. In the three months leading up to her commitment hearing, appellant shoved Dix with both hands into the kitchen counter, punched him hard enough on his shoulder to bruise him, and threw a metal object at him. In sum, these facts, in conjunction with appellant's concession that she suffers from a mental illness, establish by clear and convincing evidence that appellant is a danger to others. Therefore, the state met its burden.

Affirmed.