Submitted May 20, reversed July 2, 2014

In the Matter of E. D.,
Alleged to be a Mentally Ill Person.
STATE OF OREGON,
*Respondent,*

*v.*

E. D.,
*Appellant.*

Lincoln County Circuit Court
113978; A150322

331 P3d 1032

Susan D. Isaacs filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Andrew M. Lavin, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Appellant challenges a judgment of involuntary civil commitment, arguing that the state did not meet its burden of proving by clear and convincing evidence that, because of his mental illness, he is a danger to himself or others. ORS 426.130. We agree and, therefore, reverse.

We review whether the state presented sufficient evidence to support a civil commitment for legal error. *State v. R. E.*, 248 Or App 481, 483, 273 P3d 341 (2012). We are bound by the trial court's findings of fact that are supported by evidence in the record. *State v. A. D. S.*, 258 Or App 44, 45, 308 P3d 365 (2013). As in other equitable proceedings, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013) (stating our standard of review in juvenile dependency cases).

We state the facts consistently with that standard. Appellant was 26 years old at the time of the hearing. He suffers from schizoaffective disorder and voluntarily receives monthly injections of antipsychotic medication. In November 2011, appellant attacked another mental health client while at a treatment center. He struck that client and pushed him against a glass window; by the end of the fight, both men had cuts on their hands. Appellant told Buckmaster, a mental health investigator and crisis worker for Lincoln County Health and Human Services, that he initiated the attack because he thought that the man had stolen paint brushes from his home. He also expressed that he thought he should kill the man for stealing the paintbrushes, that the man had given him $100 to buy drugs, and that he had taken the money to teach the man a lesson. Appellant also asked Buckmaster to contact Interpol to report a crime.

About a week later, appellant was locked out of his house and went to a treatment center. When he was told that he could not stay there, he threatened to break the center's windows and, as a result, police brought him to

an emergency room. At the emergency room, Buckmaster evaluated appellant and noted that he was confused and his thoughts were disorganized. Buckmaster struggled to decide whether to send appellant home or keep him in the hospital but, upon appellant's request, sent him to the psychiatric unit.

The next day, when Buckmaster interviewed appellant, appellant asked Buckmaster if he had brought appellant's paintbrushes for him, something they had not previously discussed. Appellant told Buckmaster that he felt that he needed to break the treatment center's windows in order to get help, or that he needed to kill himself or kill somebody else in order to get arrested. During that conversation, appellant talked to people who were not present and at times referred to himself in the third person. Appellant told Buckmaster that he wished he were dead because he does not like being mentally ill; however, Buckmaster did not believe that appellant was suicidal.

At the civil commitment hearing the following week, Buckmaster observed that appellant was experiencing auditory hallucinations. At the end of the hearing, the trial court found by clear and convincing evidence that appellant suffered from a mental disorder and, because of that disorder, was a danger to himself, even though he is not suicidal, and a danger to others.

On appeal, appellant does not challenge the trial court's conclusion that he has a mental disorder. Rather, he argues that the state did not present clear and convincing evidence that, because of his mental disorder, he is a danger to himself or others.

Under ORS 426.005(1)(e), in order to justify an involuntary civil commitment, the state must prove by clear and convincing evidence that a person has a mental disorder and that, because of that disorder, the person is a danger to self, a danger to others, or unable to meet his basic needs. "The clear and convincing evidence standard is a rigorous one, requiring evidence that is of extraordinary persuasiveness, and which makes the fact in issue highly probable." *State v. M. R.*, 225 Or App 569, 574, 202 P3d 221 (2009) (internal quotation marks omitted).

In this case, the trial court determined that appellant poses a danger to himself and others. To support affirmance of that determination, "the state generally must offer more than evidence of appellant's threats of future violence, such as a corresponding overt act demonstrating an intention to carry out the threats or other circumstances indicating that actual future violence is highly likely." *State v. L. D.*, 247 Or App 394, 400, 270 P3d 324 (2011). "Whether a person is a danger to others is determined by [his] condition at the time of the hearing as understood in the context of [his] history." *State v. D. W. L.*, 244 Or App 401, 405, 260 P3d 691 (2011) (internal quotation marks omitted). Mere verbal threats of violence are generally insufficient to establish danger to others. *Id*. "Although delusional behavior may be inherently risky, that behavior is not enough to warrant involuntary commitment unless danger to self is highly probable in the near future; mere speculation is not enough." *State v. N. A. P.*, 216 Or App 432, 439, 173 P3d 1251 (2007). However, "[w]e have found generally that where a mentally ill person has threatened and has committed overt violent acts against others in the past, the clear and convincing evidence standard is met." *State v. King*, 177 Or App 373, 377, 34 P3d 739 (2001); *see generally, State v. Furnish*, 86 Or App 194, 197, 738 P2d 607 (1987) (finding that there was sufficient evidence that the appellant presented a danger to others where he "made a number of threats of violence to members of his family" and he "had actually harmed family members" more than once rather than committing one "isolated instance of violence"); *D. L. W.*, 244 Or App at 405 (concluding that the "appellant's history of serious verbal threats, and an escalation in the frequency of her erratic, impulsive, and angry conduct, culminating in several recent violent acts" was sufficient to establish that the appellant was a danger to others). *But see L. D.*, 247 Or App at 400-01 (determining that evidence that the appellant had made threats on the telephone to his family, pushed his son when returning a lawn mower, and driven slowly to obstruct traffic was not sufficient to conclude that the appellant's mental disorder would cause him to be a danger to others). Generally, "fact matching" in involuntary civil commitment cases is of "little utility" because each case must be decided on its individual facts. *King*, 177 Or App at 378. "Nevertheless, our case law

informs the issue in this case to the extent that it demonstrates how we have interpreted the 'future dangerousness' standard imposed by the law." *Id.*

The record in this case lacks clear and convincing evidence that appellant is a danger to himself or others. Although the state presented evidence of one overt violent act—the fistfight at the mental treatment center—there is no evidence of any other violent acts in appellant's past. That one incident of starting a fistfight with another mental health client, under the circumstances here, is an isolated act of violence that is not sufficient to establish that appellant is an ongoing danger to others. Indeed, at the time of the fight, Buckmaster did not seek to civilly commit appellant.

Similarly, after appellant was picked up by police the following week, Buckmaster testified that he had struggled with whether he should send appellant home or admit him to the hospital, and that he chose to admit appellant to the psychiatric unit at appellant's request. Although appellant threatened to break the windows of the treatment center the night he was admitted, he explained that he had done so after the center declined to admit him when he was seeking help. There is no evidence that appellant engaged in threatening or assaultive behavior while at the hospital in the week before the hearing. Evidence of defendant's one overt violent act—initiating the fistfight—and a few vague threats of violence are not legally sufficient to constitute clear and convincing evidence that appellant is a danger to himself or others.

Reversed.