Submitted June 15, 2015, affirmed March 1, petition for review denied June 29, 2017 (361 Or 645)

In the Matter of J. T. C.,
A Person Alleged to have a Mental Illness.
### STATE OF OREGON,
*Respondent,*

*v.*

### J. T. C.,
*Appellant.*

Multnomah County Circuit Court
140160850; A156283

392 P3d 754

Garrett A. Richardson and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and James Aaron, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

## HADLOCK, C. J.

Appellant seeks reversal of a judgment committing him involuntarily to the Oregon Health Authority for a period not to exceed 180 days on the basis of a mental disorder that, the trial court determined, makes appellant a danger to others and unable to provide for his basic needs. *See* ORS 426.130(1)(a)(C). The state concedes on appeal that the record does not support the trial court's conclusion that appellant was unable to provide for his basic needs. We agree and accept that concession, and we write only to address appellant's contention that the trial court erred in determining that he was a danger to others. We conclude that the evidence in the record is legally sufficient to support that determination; accordingly, we affirm the judgment of commitment.

Neither party has requested that we review this matter *de novo*, and we conclude that this is not an "exceptional" case that warrants *de novo* review. *See* ORAP 5.40(8)(c) (providing that the court will exercise its discretion to review *de novo* "only in exceptional cases"). Thus, in reviewing the trial court's judgment, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. S. R. J.*, 281 Or App 741, 743, 386 P3d 99 (2016).

Under ORS 426.130(1)(a)(C), a person may be committed to the Oregon Health Authority for involuntary mental health treatment for up to 180 days if, after a hearing, the court determines that the person meets the definition of "a person with mental illness." The state bears the burden of proving the statutory requirements for commitment by "clear and convincing evidence." ORS 426.130(1)(a). That standard of proof "is a rigorous one, requiring evidence that is of extraordinary persuasiveness, and which makes the fact in issue highly probable." *State v. M. R.*, 225 Or App 569, 574, 202 P3d 221 (2009) (internal quotation marks omitted).

As pertinent here, a "person with mental illness" includes a "person who, because of a mental disorder, is * * * [d]angerous to * * * others." ORS 426.005(1)(e)(A). To permit

commitment on the basis of dangerousness to others, the state must establish "that actual future violence is highly likely." *State v. M. A.*, 276 Or App 624, 629, 371 P3d 495 (2016). Although "[s]pecific acts of violence are not required to establish dangerousness," *M. R.*, 225 Or App at 574, when a person with a mental disorder "has threatened others and has also carried out an overt violent act in the past against another person, those facts generally constitute clear and convincing evidence that the person is a danger to others" for purposes of ORS 426.130(1)(a)(C). *State v. D. L. W.*, 244 Or App 401, 405, 260 P3d 691 (2011). Past acts, including verbal acts, can justify a finding of dangerousness, if they "form a foundation for predicting future dangerousness." *M. R.*, 225 Or App at 574 (internal quotation marks omitted). An exception to that general rule exists when the overt violent act is "isolated" and "not sufficient to establish that appellant is an ongoing danger to others." *State v. E. D.*, 264 Or App 71, 75, 331 P3d 1032 (2014); *see also State v. L. D.*, 247 Or App 394, 400, 270 P3d 324 (2011) (reversing commitment where the appellant had only once "pushed" another person).

Here, viewing the record in the light most favorable to the trial court's commitment determination, *S. R. J.*, 281 Or App at 743, we conclude that the evidence is legally sufficient to support a finding that appellant's mental disorder has caused him to act violently on more than a single, isolated occasion, and that future violence is highly likely.

Appellant was diagnosed with schizophrenia in 2011, and he was 18 years old at the time of the commitment hearing. When he was first diagnosed, appellant was hospitalized for about one month, for what he described as a problem with his temper. Appellant began living with his grandmother in early 2013. In the fall of that year, he stopped taking medication for his schizophrenia, because he did not like its side effects.

In the months that followed, appellant's grandmother noticed that appellant's behavior was increasingly paranoid; for example, he accused his grandmother of tampering with his food and medicating him in the middle of the night. The grandmother also noticed increasing aggression. The grandmother testified that appellant was physically

aggressive with his older brother, "probably" related more to "the paranoia things" than to "siblings bickering." Appellant also became increasingly confrontational with both his grandmother and his brother, yelling at them close to their faces.

Appellant's increasing aggressiveness culminated in January 2014, in the incident that resulted in his most recent hospitalization. Appellant woke his family members in the morning with the sound of banging doors and cupboards, hitting walls, and screeching, "It's your fault. It's the reason that I'm like this," and "I'm going to get you for that." Appellant did not respond to the grandmother's attempts to calm him down, but continued screaming and "began to shove" her. Appellant was "taking a hold" of his grandmother "and pushing [her] against the wall." Although appellant's grandmother was not injured, the pushing was strong and it did not happen "just one time." Rather, "[i]t was two or three times that that happened," and appellant's grandmother feared for her safety. Appellant's brother stepped in between them. At that point, appellant's grandmother tried to call a crisis hotline from a kitchen telephone, but appellant rushed in, grabbed the telephone from her hands, and "ripped it out of the wall." Appellant's grandmother managed to call the crisis line from a different telephone before appellant hung up the receiver. Appellant did not become calm until police officers arrived at the house.

In ruling from the bench after a hearing, the trial court found that appellant had a mental disorder and was "somewhat confused, disorganized in his thinking." The court found that, at the hearing, appellant continued to be "extremely, extremely paranoid and guarded," and that he was not willing to take medication voluntarily. The court further determined that, "for reasons * * * that appear to be very psychotic," appellant had had a "loss of control" that put his grandmother at risk. Considering appellant's past behavior and evidence of his unwillingness to take his medication, the court found that, if appellant were released from the hospital, he would be a danger to his grandmother. Accordingly, the court ordered that appellant be involuntarily committed to the Oregon Health Authority for a period of time not to exceed 180 days, under ORS 426.130(1)(a)(C).

On appeal, appellant does not dispute the trial court's finding that he has a mental disorder. Rather, he contends that the record is not legally sufficient to support a determination that, because of his mental disorder, he is a danger to others; on that point, he asserts that the trial court's determination of dangerousness is speculative. We disagree. In our view, the evidence is sufficient to support the court's determination. Of primary significance is the evidence that, after he stopped taking his medication, appellant—who previously had been hospitalized for schizophrenia at least in part because of his "temper"—became increasingly paranoid and aggressive in the months leading up to his most recent hospitalization, eventually leading to appellant's physical confrontations with his brother and his grandmother. *D. L. W.*, 244 Or App at 405 ("[I]f a mentally ill person has threatened others and has also carried out an overt violent act in the past against another person, those facts generally constitute clear and convincing evidence that the person is a danger to others."). The court's additional findings regarding appellant's paranoid and confused presentation in court and the likelihood that he would not take his medication also support the court's determination. *Id.* ("Whether a person is a danger to others 'is determined by [his] condition at the time of the hearing as understood in the context of [his] history.'").

As noted, to permit commitment on the basis of danger to others, the state must establish "that actual future violence is highly likely." *M. A.*, 276 Or App at 629. In appellant's view, despite his past behavior and his behavior at the hearing, the evidence is insufficient to support a finding that future violence is highly likely. As the dissent observes, appellant testified at the commitment hearing that, although he had displayed dangerous behavior toward his grandmother, he did not want to hurt her.[1] But appellant

---

[1] As the dissent observes, mental health examiners who testified at the hearing did not conclude that appellant was dangerous to others. But the examiners' opinions are not dispositive for at least two reasons. First, it appears that they may have based their opinions on their view of the legal standard for commitment, a question that is for courts to decide. Second, although mental health examiners' opinions can be entitled to significant weight—and although another court might well have come to a different conclusion about appellant's dangerousness on this record—the examiners' opinions regarding a person's dangerousness do not *compel* a particular outcome.

also testified that he had not pushed his grandmother. That testimony, rather than compelling a finding that appellant is not dangerous, allows an inference that appellant has not come to terms with his behavior in a way that would allow him to prevent similar violence in the future. A court could reasonably infer from appellant's testimony, as well as from the evidence of his past behavior, his continued paranoia, the likelihood that he would not take his medication, and appellant's acknowledgement that his "[t]emper" had caused his previous hospitalization, that if he were to be released from the hospital, future violence toward his grandmother or to the people with whom he was living was highly likely to occur. The trial court did not err in committing appellant based on a determination that he is dangerous to others.

Affirmed.

**EGAN, J.,** dissenting.

I agree with the majority opinion's conclusion that the evidence in this record is insufficient to support commitment on a "basic needs" theory. I disagree, however, with its conclusion that the record is legally sufficient to support the trial court's determination that, because of his mental disorder, appellant is a danger to others. Accordingly, I would reverse the judgment committing appellant to the Oregon Health Authority and I dissent from the majority's contrary conclusion.

The majority has correctly stated the general legal principles that govern our review in civil commitment cases, so I do not repeat those principles here. The majority's error, in my view, is in its application of those principles. I would conclude that the record in this case lacks clear and convincing evidence that appellant is a danger to others, because actual future violence by appellant is not highly likely.

Here, the record contains evidence that appellant had a single violent episode when he pushed his grandmother against a wall and yelled, "It's your fault. It's the reason that I'm like this. *** I'm going to get you for that," and ripped the kitchen phone out of the wall. There is also evidence that appellant "probably" had physical confrontations with his brother, which related more to "paranoia things" than

to "siblings bickering"; however, appellant's brother did not testify at the commitment hearing. There is no other evidence of instances in which appellant acted violently.

I would conclude that appellant pushing his grandmother and the probable physical confrontations with his brother are isolated acts that are not legally sufficient to establish, by clear and convincing evidence, that actual future violence by appellant is highly likely. *See State v. E. D.*, 264 Or App 71, 75, 331 P3d 1032 (2014) (concluding that the appellant was not a danger to others even though the state presented evidence of an overt act—a fistfight at a mental health treatment center and a few vague threats of violence); *State v. L. D.*, 247 Or App 394, 400-01, 270 P3d 324 (2011) (concluding that evidence that the appellant had made threats on the telephone to his family, pushed his son when returning a lawn mower, and driven slowly to obstruct traffic was not sufficient to conclude that the appellant's mental disorder would cause him to be a danger to others); *see also State v. S. R. J.*, 281 Or App 741, 757, 386 P3d 99 (2016) (discussing previous case law in which we have based determination of dangerousness to others on explicit threats combined with overt acts that made the threats credible). I also point out that, after defendant pushed his grandmother and ripped the telephone out of the wall, the grandmother attempted to call the crisis line from a different telephone, and appellant did not take the telephone from her; rather, he hung up the receiver. Thus, appellant did not continue to be violent and began to deescalate after the isolated act of violence.

Although appellant verbally threatened his grandmother, I would conclude that appellant's vague threat does not amount to an explicit threat that is a legally sufficient predictor of future violence. In this case, appellant's threat was generalized. *See State v. G. A. K.*, 281 Or App 815, 821, 384 P3d 555 (2016) (concluding that the appellant was not a danger to others where the appellant's threats were "vague" and "in the absence of any overt act to carry them out"); *contra State v. D. L. W.*, 244 Or App 401, 405, 260 P3d 691 (2011) (concluding that the appellant's history of "serious verbal threats"—including graphic and numerous threats to kill victims—"and an escalation in the frequency of her

erratic, impulsive, and angry conduct, culminating in several recent violent acts" was sufficient to establish that the appellant was a danger to others).

The majority opinion emphasizes that when appellant was 16 years old he was "hospitalized for schizophrenia at least in part because of his 'temper'" to support its conclusion that a court could reasonably infer that future violence by appellant was highly likely to occur. 284 Or App at 42. In my view, "temper" is a vague characterization that does not equate to an inference that actual future violence by appellant is highly likely. Without more information about what specifically appellant's "temper" had encompassed, the majority assumes too much by concluding that a court could infer future violence by appellant based on his previous "temper."

There is no evidence that appellant engaged in threatening or assaultive behavior while at the hospital the week before the commitment hearing. Additionally, all of the mental health professionals who had contact with appellant before and at the commitment hearing—Feaver, the therapist who placed him on the hospital hold, and Carlyle and Doherty, the two mental health examiners at the commitment hearing—did not believe that appellant was a danger to others. Instead, Feaver described appellant as more "internally frustrated and confused and despondent, but he was not aggressive."

Appellant testified at the commitment hearing that he would not harm his grandmother. The majority opinion notes that appellant also testified that he had not pushed his grandmother, and relies on that statement to conclude that "[t]hat testimony, rather than compelling a finding that appellant is not dangerous, allows an inference that appellant has not come to terms with his behavior in a way that would allow him to prevent similar violence in the future." 284 Or App 43. I disagree. The fact that an 18-year-old denied pushing his grandmother at his civil commitment hearing does not necessarily permit an inference that actual future violence would be *highly likely*. Instead, I would conclude that appellant's testimony that he would not harm his grandmother, coupled with his denial of pushing

his grandmother, allows a reasonable inference that defendant did not intend to harm her in the future, and therefore actual future violence was not highly likely.

I recognize that the state presented evidence that when appellant stopped taking medication for schizophrenia he became paranoid, and that appellant would likely stop taking his medication. However, that evidence, along with the majority opinion's reliance on appellant's previous hospitalization for schizophrenia, in part because of his "temper," and appellant's denial of pushing his grandmother, is not sufficient to prove that appellant is highly likely to engage in future violence. Appellant engaged in an isolated act of violence and made a few vague threats that, under the circumstances here, do not establish that actual future violence by appellant is highly likely to occur. Thus, I would conclude that the evidence in the record is not legally sufficient to support the trial court's determination that there was clear and convincing evidence that appellant is a danger to others.

I therefore respectfully dissent from the contrary conclusion reached by the majority opinion.