Submitted August 31, reversed October 14, 2020

In the Matter of H. M.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

H. M.,
*Appellant.*

Multnomah County Circuit Court
19CC05499; A172659

475 P3d 133

Appellant appeals a judgment committing him to the custody of the Mental Health Division for a period not to exceed 180 days, based on the trial court's determination that he was dangerous to others due to a mental disorder. Appellant is a 32-year-old man with schizoaffective disorder, bipolar type, and methamphetamine use disorder. He has a history of violence against family members, including choking his father and hitting his sister during an incident that occurred about a year before the commitment hearing. Appellant does not dispute that he has a mental disorder but argues that the evidence was insufficient to find that he was dangerous to others at the time of the commitment hearing. *Held*: The trial court erred. Absent some current evidence to link appellant's past violent behavior to a current serious and highly probable threat of harm, the trial court's conclusion that appellant was dangerous to others at the time of the hearing was too speculative.

Reversed.

Benjamin S. Johnston, Judge.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Dashiell L. Farewell, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed.

**AOYAGI, J.**

Appellant appeals a judgment committing him to the custody of the Mental Health Division for a period not to exceed 180 days, based on the trial court's determination that he was dangerous to others due to a mental disorder. We agree with appellant that the evidence was insufficient to support the dangerousness finding and, accordingly, reverse.

We state the facts in the light most favorable to the trial court's disposition. *State v. L. R.*, 283 Or App 618, 619, 391 P3d 880 (2017) (standard for non-*de novo* review). Our task is to determine whether the record, so viewed, is sufficient to meet the legal standard for involuntary commitment. *Id*. Because defendant does not contest that he has a mental disorder, and because the trial court committed appellant based solely on his dangerousness to others and rejected any other bases for commitment, we limit our discussion to the evidence of dangerousness to others.

Appellant is a 32-year-old man with schizoaffective disorder, bipolar type, and methamphetamine use disorder. He has been hospitalized for mental health issues on multiple occasions, including at least three times in 2019. At the time of his commitment hearing on October 28, 2019, appellant had been hospitalized since October 12. The reason for his October 12 admission is not in the admitted evidence, but, during that hospitalization, a physician's hold was placed on appellant based on his being dangerous to himself and his being unable to meet his basic needs. That hold led to this commitment proceeding.[1]

Appellant's treating psychiatrist, Meehan, testified about appellant's then-current hospital stay, which had lasted 16 days at the time of the hearing. Appellant tested positive for methamphetamine and cannabis upon admission. While hospitalized, he had been overtly psychotic, extremely paranoid, largely nonverbal, and uncooperative with any kind of interview about his mental health, but he

---

[1] Although appellant was held based on danger to self and inability to meet basic needs, the precommitment investigator reported on inability to meet basic needs and danger to others, and the trial court ultimately committed appellant based solely on danger to others.

was consistently compliant with his medications. Appellant would get "somewhat agitated" if people attempted to talk to him about his mental health issues; indeed, Meehan terminated her first interview with appellant because he got agitated and she "didn't feel safe." However, at no point during his hospitalization had appellant struck anyone or become agitated to the point of needing seclusion and restraint.

As far as dangerousness to others, Meehan expressed concern about appellant being a danger to others based on the records indicating that appellant had a long history of violence, particularly towards his father. According to the records, appellant reported having a physical fight with his father in 2009, and he reported punching his father in 2017. Most recently, appellant choked his father without provocation. Asked whether she thought that appellant would be "a danger to other people" if he was discharged that day, did not take medication, and did not have a structured environment in which he was monitored and treated, Meehan opined that it was "extremely likely that that would happen," given appellant's "history of this kind of agitated behaviors."

Meehan also testified regarding appellant's substance abuse, which dates back to at least 2005. Meehan testified that substance use, particularly methamphetamine use, "exacerbates" appellant's underlying psychiatric disorder. Meehan further noted "a suggestion in the notes that [appellant] becomes more violent when he's using methamphetamine and so it may be that some of these interpersonal violent episodes are also related to the methamphetamine use." Meehan would recommend that appellant receive substance abuse treatment once his psychiatric condition stabilizes with medication.

In addition to Meehan, the court heard testimony from appellant's father, a counselor who had treated appellant in the community, and appellant.

Appellant's father testified about appellant's history and about the choking incident to which Meehan referred in her testimony. Appellant's father testified that appellant is "good" when he takes his medications but is a "different person" when he does not. Appellant's father is afraid of

appellant since an incident that occurred "some months" before the commitment hearing or "maybe even longer." In that incident, appellant had disappeared for 13 days, before showing up at his father's house at 3:00 a.m. Appellant was sick and hungry, so his father let him in and gave him food. When appellant's father told him not to stuff so much food into his mouth at once, appellant grabbed his father by the neck, choked him, and grabbed a spoon to use to hit him. Appellant's sister woke up, screamed, and called the police. Appellant hit his sister twice before the police arrived and arrested him. Appellant's father and sister have restraining orders against appellant as a result of that incident, which suggests that the incident actually occurred over a year before the commitment hearing (around August 2018), based on the date of the restraining order in the record.

Vejo is a counselor at a hospital psychiatric clinic at which appellant has been a patient since at least 2014. Like appellant's father, Vejo testified that appellant is "pretty good" when he takes his medications but is a "different person" when he does not. Without medication, appellant is delusional, lacks awareness of space and time, and cannot answer simple questions. Vejo has never seen appellant exhibit any violence, on or off medication; appellant is different when he is off medication but not violent. For the last five years, Vejo has seen appellant cycle through going off medication, ending up in jail or in the hospital, and then returning to the clinic and getting back on medication.

In his own testimony, appellant admitted to having two convictions each for fourth-degree assault and menacing, although there is nothing in the record about the dates or circumstances of those convictions.[2] Appellant did not remember choking his father. He recognized that it might have happened, although he doubted that he would do such a thing. According to appellant, he is different when he is off medication—he cannot really tell that himself, but other people tell him that that is the case—so it is possible that he

_____

[2] There is also evidence that appellant had been taken into police custody 23 times as of June 2018, possibly in 2017 and 2018 alone, although the time period is unclear. Because the record is silent as to why appellant was taken into custody, we reject any inference suggested by the state that it was because appellant engaged in violent or aggressive behavior as a result of his mental disorder.

choked his father when he was off medication, but he is not sure. Appellant said that it was scary to think that he could hurt someone he loves while off medication, which was why he intended to take his medication. Appellant denied ever having thoughts of hurting people.[3]

Finally, the court queried the examiners. The first examiner opined that appellant was dangerous to others, based on his past violence toward family members. She expressed particular concern that appellant could not remember harming his father, which showed that appellant's insight and judgment were so impaired by his mental disorder that he did not recognize that he was acting on impulses and harming someone he greatly cares about. The second examiner summarily agreed with the first examiner.

At the conclusion of the hearing, the trial court determined that appellant had a mental disorder that caused him to be dangerous to others. According to the court, the basis for its finding was appellant's history, as described by Meehan, and appellant's father's testimony about the choking incident. Appellant appeals the resulting judgment.

ORS 426.130 allows for the civil commitment of a "person with mental illness." A person with mental illness includes a person who, because of a mental disorder, is dangerous to others. ORS 426.005(1)(f)(A). A person cannot be civilly committed on the basis of a mental disorder alone. *State v. Miller*, 198 Or App 153, 161, 107 P3d 683 (2005).

To prove that a person is dangerous to others, the state must establish by clear and convincing evidence "a factual foundation to predict appellant's future dangerousness based on his condition at the time of the hearing in the context of his history." *State v. M. G.*, 296 Or App 714, 718, 440 P3d 123 (2019). "[I]t is appropriate for a court to consider

---

[3] Appellant also denied having told the precommitment-hearing investigator otherwise. According to the investigator's report in the record, in speaking with the investigator, appellant "denied thoughts of hurting himself but endorsed 'sometimes' having thoughts of hurting others but state[d] 'that's just not me' and 'I guess I just have to find my home' and then laugh[ed]." It is unclear whether that statement was excluded as hearsay or is part of the record, and the state mentions it only briefly on appeal. In any event, the trial court does not appear to have relied on it and arguably credited appellant's testimony when it found that appellant does not mean to be violent.

the testimony of mental health experts, the person's past acts, and the person's apparent condition at the time of the hearing." *State v. Lott*, 202 Or App 329, 335, 122 P3d 97 (2005), *rev den*, 340 Or 308 (2006). "Although 'dangerous' is a common term that, in ordinary usage, may refer to a broad range of threats, the type of 'danger' necessary to justify an involuntary civil commitment is a narrow range of serious and highly probable threats of harm." *State v. S. R. J.*, 281 Or App 741, 749, 386 P3d 99 (2016). Also, "actual future violence" must be "highly likely." *State v. L. D.*, 247 Or App 394, 400, 270 P3d 324 (2011). "Conclusions based on conjecture as to whether appellant poses a danger to others are insufficient." *State v. M. A.*, 276 Or App 624, 629, 371 P3d 495 (2016) (internal quotation marks omitted).

In this case, we agree with appellant that the evidence was insufficient to find that, at the time of the hearing on October 28, 2019, he was dangerous to others as a result of his mental disorder, *i.e.*, that he posed a serious and highly probable threat of harm to others at that time.

Although the record contains few details, there is certainly evidence that appellant has a long, if sporadic, history of violent behavior toward family members, caused by his mental disorder, and that his use of methamphetamine and other substances exacerbates his disorder. Appellant's family members are understandably afraid of him and want him to get help. The difficulty with committing appellant on October 28, 2019, is that there is no evidence that appellant had been violent toward *anyone* for at least "some months" and possibly more than a year. Unless we are prepared to say that appellant may be civilly committed anytime that he goes off his psychiatric medication, based solely on his having several violent incidents in his past while off medication, we cannot say that this record supports a finding that appellant was dangerous to others as of October 28, 2019.

In our view, the civil commitment statutes do not permit a finding of dangerousness to others, as a predicate to taking away someone's liberty, based solely on past history without more. "[A] mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the

basis for a finding that one is a mentally ill person pursuant to ORS 426.005." *Miller*, 198 Or App at 158 (internal quotation marks omitted). For examples of circumstances in which the necessary showing was made, see *State v. E. D.*, 264 Or App 71, 74, 331 P3d 1032 (2014) (an appellant's threats of future violence, combined with "a corresponding overt act demonstrating an intention to carry out the threats or other circumstances indicating that actual future violence is highly likely," is generally sufficient to establish dangerousness to others); *State v. D. L. W.*, 244 Or App 401, 405, 260 P3d 691 (2011) (recent threats combined with past overt violence is generally enough to establish dangerousness to others); *State v. K. S.*, 223 Or App 476, 486, 196 P3d 30 (2008) (the appellant's history of violent behavior when off medication, combined with his recent confrontation with someone and his destruction of property both at his parents' home and at the hospital, was sufficient to establish dangerousness to others); *State v. Bodell*, 120 Or App 548, 551, 853 P2d 841 (1993) (recent threats combined with past threats may be sufficient to establish dangerousness to others, if they provide ample evidence to predict future violence).

Given appellant's specific history, it might not take much evidence to bridge the gap from the fact of appellant's past violence to his being dangerous to others as of October 28, 2019, but some such evidence was necessary. Here, the only arguably relevant evidence toward that end was Meehan's brief testimony that she terminated her first hospital interview with appellant because she "didn't feel safe" when appellant became "agitated" by her discussing his mental disorder. Such caution on the part of an attending psychiatrist when meeting a new patient for the first time is not enough to establish appellant's dangerousness, even considering the relatively low bar to do so in light of appellant's history, at least on this record where there is only a vague reference to appellant being "agitated" and no evidence of appellant actually threatening or taking any action toward Meehan. Absent some current evidence to link appellant's past behavior to a *current* serious and highly probable threat of harm, the trial court's conclusion that appellant was dangerous to others as of October 28, 2019, relied too much on "conjecture." *M. A.*, 276 Or App at 629.

Because the evidence is insufficient to support the trial court's determination that appellant was dangerous to others at the time of the commitment hearing, the trial court erred in committing appellant, and the judgment is reversed.

Reversed.