Submitted April 30, reversed June 23, 2021

In the Matter of J. W. B.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

J. W. B.,
*Appellant.*

Benton County Circuit Court
20CC04423; A174434

492 P3d 142

Joan E. Demarest, Judge.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joseph Callahan, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Powers, Judge, and Hadlock, Judge pro tempore.

PER CURIAM

Reversed.

Powers, J., concurring.

## PER CURIAM

We reverse a judgment committing appellant to the Mental Health Division. We briefly outline only the most pertinent evidence, as a comprehensive discussion of the facts would not benefit the parties, the bench, or the bar.

Appellant has been diagnosed with schizoaffective disorder, he has "command hallucinations" that include perceiving that God tells him to be violent toward other people, and he does not want to take antipsychotic medications. Appellant was hospitalized after he became angry with a teenager, who was with friends in a common area at appellant's apartment complex. Appellant came out of his apartment with a large kitchen knife and held the knife over his head, yelling at the teenager and his friends to leave. Appellant was 30 to 40 feet from the teenagers at that point, he did not rush at them, and he stayed in the area "right outside of his apartment." The teenagers went inside another apartment and locked the door. Two other people (not part of the group of teenagers) had been within 10 feet of appellant, but they had left quickly.

Appellant was taken to a hospital, where he struggled against being secured to a gurney. Records reflect that he made verbal threats and displayed physical aggression while in the emergency room, but the evidence included no detail of the nature of that aggression. After being admitted to a unit, appellant made additional verbal threats, including to gouge one patient's eye out with a pen, but he did not display further physical aggression. At some point, however, appellant threw water at another patient. He also urinated and defecated on the floor and threw at least the urine at a camera. The record indicates that appellant committed two assaults in the past, but it gives no further details beyond noting that neither assault appears to have been recent.

A person can be committed on "danger to others" grounds only if evidence permits a rational factfinder to conclude that a mental disorder makes the person

"highly likely to engage in future violence towards others, absent commitment. *** [C]onclusions *** based on conjecture are not enough; actual future violence must be highly likely. Evidence of past violent acts must provide a foundation to predict future dangerousness, not merely describe past isolated incidents."

*State v. E. J. J.*, 308 Or App 603, 612, 479 P3d 1073 (2021) (quotation marks, bracketing, and citations omitted).

On this record, the trial court could find that appellant's mental disorder caused him to engage in extremely disturbing behavior and that he could benefit from treatment that he would not accept absent involuntary commitment.[1] However, the evidence admitted at the hearing was not sufficient to support a finding that appellant was "highly likely" to engage in "actual" physical violence against others, given the lack of evidence of recent violence (other than resisting hospitalization) and the relatively isolated nature of his threatening behavior at the apartment complex. We also conclude that the risk that anybody would harm appellant as a result of his behavior was too speculative to support commitment on the basis that appellant was dangerous to himself.

Reversed.

**POWERS, J.,** concurring.

I agree that on this record there is insufficient evidence for a rational factfinder to have found that it was highly probable that appellant is "dangerous to others" as that statutory phrase has been interpreted over the years. A person is "dangerous to others" for purposes of ORS 426.005(1)(f)(A) if the person's "mental disorder makes [the person] highly likely to engage in future violence toward others, absent commitment." *State v. S. E. R.*, 297 Or App 121, 122, 441 P3d 254 (2019). I write separately to observe that the "dangerous to *** others" standard may have strayed from the legislative intent embodied by the plain text of ORS

---

[1] Neither party advocated below for an "assisted outpatient treatment" order under ORS 426.130(1)(b)(B) and ORS 426.133.

426.005(1)(f)(A)[1]. In an appropriate case where the parties have properly raised it for our consideration, we may want to examine whether that standard has become untethered to the legislative intent embodied in the civil-commitment framework.

As an initial matter, it is worth noting that the statutory framework involves more than just a binary choice between involuntary commitment or dismissal. There are five possible outcomes in a civil-commitment hearing. *See, e.g.*, *State v. J. R. B.*, 290 Or App 858, 859-60, 418 P3d 38 (2018) (describing the possible outcomes expressed in ORS 426.130). Three of those potential outcomes follow a trial court's determination that there is clear and convincing evidence that the person is a person with mental illness:

- If the person is willing and able to participate in treatment on a voluntary basis, and the court finds that the person will probably do so, then the court shall order the release of the person and dismiss the case. ORS 426.130(1)(a)(A).

- The court may order conditional release. ORS 426.130(1)(a)(B).

- The court may order commitment to the Oregon Health Authority for treatment if voluntary treatment or conditional release is not in the best interest of the person. ORS 426.130(1)(a)(C).

An order for conditional release or involuntary commitment shall not exceed 180 days under ORS 426.130(2). There are two potential outcomes that arise if a court determines that the person is not a "person with mental illness" as defined by ORS 426.005(1)(f):

---

[1] ORS 426.005 provides, in part:

"(1) As used in ORS 426.005 to 426.390, unless the context requires otherwise:

"\*\*\*\*\*

"(f) 'Person with mental illness' means a person who, because of a mental disorder, is one or more of the following:

"(A) Dangerous to self or others."

- The court shall, if the person has been detained, release the person from custody and dismiss the case. ORS 426.130(1)(b)(A).

- Alternatively, the court shall, if the person has been detained, release the person from custody and may order the person to participate in assisted outpatient treatment if additional findings are made in accordance with ORS 426.133. *See* ORS 426.130 (1)(b)(B). The order for assisted outpatient treatment shall not exceed 12 months. ORS 426.130(2).

Thus, although it does not directly bear on whether the "dangerous to others" standard has strayed from the legislature's intent, it is important to note that, even when a trial court concludes that the person meets the statutory definition of a "person with mental illness," involuntary commitment is not the only possible outcome.[2]

In articulating the high standard for a civil commitment based on danger to others, we have explained:

"Although 'dangerous' is a common term that, in ordinary usage, may refer to a broad range of threats, the type of 'danger' necessary to justify an involuntary civil commitment is a narrow range of serious and highly probable threats of harm. For example, *** to permit commitment on the basis that a person is dangerous to others, the state must establish 'that actual future violence is highly likely.' We impose those rigorous standards because of 'the serious deprivation of liberty and social stigma that are attendant to a civil commitment, and the fact that such a preventive confinement is predicated on a prediction of future behavior.'"

*State v. S. R. J.*, 281 Or App 741, 749, 386 P3d 99 (2016) (citations omitted). Generally stated, there must be more than "evidence of appellant's threats of future violence, such as a corresponding overt act demonstrating an intention to carry out the threats or other circumstances indicating that actual future violence is highly likely." *State v. E. D.*,

---

[2] Further, I agree that neither party has advocated for the assisted outpatient treatment option provided by ORS 426.130(1)(b)(B), which requires further findings by the trial court.

264 Or App 71, 74, 331 P3d 1032 (2014) (internal quotation marks omitted). Although specific acts of violence are not strictly required to establish dangerousness, we have concluded that—even where there is evidence of violence—the record may be insufficient because of the isolated nature of the incident. *Compare State v. Bodell*, 120 Or App 548, 550, 853 P2d 841 (1993) (explaining that specific acts of violence are not required "as long as there is ample evidence to form a foundation for predicting future violent behavior" (internal quotation marks omitted)), *and State v. M. A.*, 276 Or App 624, 629, 371 P3d 495 (2016) (observing that "[p]ast acts including verbal acts, can justify a finding of dangerousness, so long as the acts clearly form a foundation for predicting future dangerousness" (internal quotation marks omitted)), *with State v. T. M.*, 296 Or App 703, 711, 437 P3d 1197 (2019) (holding that there was insufficient evidence of dangerousness where appellant raised a fireplace poker over her head, advanced toward her ex-husband, and said she would kill him because the incident was "a classic example of an 'isolated occurrence' of violence").

In this case, appellant threatened a group of people in a common area of the apartment complex where he lived by raising an eight-inch kitchen knife over his head yelling, "It's time to leave." Although he was 40 feet away from the group, one of the teenagers in the group testified that they were "pretty freaked out" such that they backed up and got into a nearby apartment as fast as possible. The record also contains general testimony about appellant's verbal threats and physical aggression toward hospital staff and evidence that appellant threw urine and possibly feces while in seclusion. After getting out of seclusion, appellant threatened to gouge out another patient's eyes with a pen, threw water at another patient, and there was evidence that appellant was having command hallucinations and possibly responding to the hallucinations. Although I agree that the record in this case does not meet the standard articulated by our prior cases, it may be worth considering in the appropriate case whether the high standard is consistent with the plain, natural, and ordinary meaning of "dangerous" as that term is used in the civil commitment statutory framework.

Maintaining a high bar for civil commitments may have the unintended consequence of failing to address mental illness before similar conduct leads to criminal charges and, consequently, the person's entry into the criminal justice system.