Submitted June 29, affirmed July 28, 2021

In the Matter of C. L.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

C. L.,
*Appellant.*

Coos County Circuit Court
6987; A174596

495 P3d 748

Appellant contests an order committing him to custodial treatment, based on a finding that as a result of mental disorder, he was dangerous to others. Appellant argues that the evidence was not sufficient to support the trial court's finding of dangerousness, but he does not request *de novo* review of the record. *Held*: Although the record contains only one documented instance of actual violence, the record reveals that after appellant discontinued medication in early 2020, his behavior became increasingly concerning and aggressive toward family members and neighbors. Based that evidence, the trial court did not err in concluding that appellant posed a danger to others.

Affirmed.

Megan Jacquot, Judge.

Alexander C. Cambier and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Daniel Norris, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

Appellant appeals from an order finding him to be a person with a mental illness that is dangerous to others and committing him to the custody of the Oregon Health Authority for a period not to exceed 180 days. Appellant has not asked us to exercise *de novo* review pursuant to ORS 19.415(3), and this is not an appropriate case to do so. Accordingly, we look to whether "the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. M. A.*, 276 Or App 624, 625, 371 P3d 495 (2016). We find the evidence here sufficient and affirm.

Appellant has a long and documented history of schizophrenia. However, there is only one documented incident of actual violence by appellant. On Thanksgiving of 2018, appellant, while having delusions, "slugged" his sister on "the side of the head." As a result of that incident, the state filed criminal charges against appellant, and he entered mental health court.

Appellant initially did well in mental health court. However, in the beginning of 2020, appellant discontinued taking his medication and self-medicated with marijuana. As a result, the record shows increased paranoid and concerning behavior by appellant. Over six months, beginning in 2020, appellant was admitted to the hospital three times for mental health treatment. By August 2020, defendant's mental health had deteriorated to the point that he could no longer safely participate in mental health court.

Prior to a hearing determining his continuation in mental health court, appellant "was pacing and talking to people who were not there." Appellant confronted the mental health court's prosecutor in the courthouse hallway causing the prosecutor to fear for her safety, such that she sought refuge in the court's chambers and in a locked attorneys' room. During the hearing, appellant angrily told the prosecutor that "she was exhausting her right to live." The prosecutor described how appellant's threats frightened her and she later informed the district attorney that she would not

appear in court with appellant unless armed security was present.

In July 2020, defendant sent his sister text messages telling her he wanted to kill her and asked her to "Make it easy for me. Meet me somewhere so I can slit your throat."

On August 7, 2020, a witness called police after appellant told the witness, numerous times, that the neighbors had been ruining his life since he was 10 or 11. And, he said "I'm going to take a gun and I'm going to go shoot them."

Around August 12, 2020, police received several calls expressing concern over appellant's behavior. The witness, who had earlier reported the threats to shoot the neighbors, woke up to appellant screaming. The witness testified that she "took a step outside and I could start to hear everything very clearly. And, most of it was unintelligible screaming. But, there was an occasional threat, an occasional, 'I'm going to—I'm going to hurt you. I'm going to kill you guys. I have guns.'"

Another witness called the police about appellant's behavior. She testified that appellant appeared to be having delusions and was loudly addressing someone who he appeared to believe was present and was swinging a two-by-four back and forth at the illusional person. Police found the two-by-four which was about three feet long and had been fashioned into a weapon by driving nails through the board so that the sharp points protruded through the end of the board.

Appellant's mother testified that "[a]ll of a sudden I seen him out in the driveway with a piece of firewood. *** And, I called 9-1-1 and got out of the house and behind the house." She hid in her locked bathroom until police arrived. When asked why she hid from appellant she replied "[b]ecause he was fighting me. It was scary. I've never seen—seen that kind of a reaction or actions out of my son." In describing why she hid, she testified that "I didn't know what else to do. I didn't—I wanted to be out of his sight. I didn't want to be in the—in his line of anger."

Under Oregon law, a person may be involuntarily committed if the person is determined to be a "person with mental illness." ORS 426.130(1)(a)(C). A "person with mental illness" includes a "person who, because of a mental disorder, is *** [d]angerous to *** others." ORS 426.005(1)(f)(A). Whether the evidence is sufficient to support a determination that appellant is a danger to others is a question we review as a matter of law. *State v. T. Y.*, 285 Or App 21, 24, 396 P3d 986 (2017).

To permit commitment on the basis of dangerousness to others, the state must establish "that actual future violence is highly likely." *M. A.*, 276 Or App at 629. Although "[s]pecific acts of violence are not required to establish dangerousness," *State v. M. R.*, 225 Or App 569, 574, 202 P3d 221 (2009), when a person with a mental disorder "has threatened others and has also carried out an overt violent act in the past against another person, those facts generally constitute clear and convincing evidence that the person is a danger to others" for purposes of ORS 426.130(1)(a)(C). *State v. D. L. W.*, 244 Or App 401, 405, 260 P3d 691 (2011). Past acts, including verbal acts, can justify a finding of dangerousness, if they "form a foundation for predicting future dangerousness." *M. R.*, 225 Or App at 574 (internal quotation marks omitted). An exception to that general rule exists when the overt violent act is "isolated" and "not sufficient to establish that appellant is an ongoing danger to others." *State v. E. D.*, 264 Or App 71, 75, 331 P3d 1032 (2014); *see also State v. L. D.*, 247 Or App 394, 400, 270 P3d 324 (2011) (reversing commitment where the appellant had only once "pushed" another person).

In *State v. J. T. C.*, 284 Or App 38, 392 P3d 754, *rev den*, 361 Or 645 (2017), we considered a similar case where the appellant had only a single documented instance of violence, but had been off medication and decompensated as a result. A divided panel of this court held that the evidence was sufficient to support the involuntary commitment. In doing so, we reasoned:

"Of primary significance is the evidence that, after he stopped taking his medication, appellant—who previously had been hospitalized for schizophrenia at least in part because of his 'temper'—became increasingly paranoid

and aggressive in the months leading up to his most recent hospitalization, eventually leading to appellant's physical confrontations with his brother and his grandmother."

*J. T. C.*, 284 Or App at 42.

As *J. T. C.* exemplifies, cases where an appellant, like here, has only a single instance of violent behavior, are close cases. However, in light of *J. T. C.*, and for similar reasons, we conclude that the evidence here was legally sufficient. Like *J. T. C.*, appellant's acts were of increasing concern—paranoia, threats, and the two-by-four—after he stopped medication. In reaching that conclusion, we emphasize the standard of review at play. We are not asked to weigh the evidence ourselves or arrive at our own conclusion about appellant's risk of future dangerousness. Rather, we ask whether the trial court was permitted, based on this evidentiary record, to make that conclusion. The evidence in this record is legally sufficient for such conclusion.

Affirmed.