Submitted September 12, 2019, affirmed January 2, 2020

In the Matter of M. J. M.,
a Person Alleged to have Mental Illness.
### STATE OF OREGON,
*Respondent,*

*v.*

### M. J. M.,
*Appellant.*

### Lane County Circuit Court
18CC05817; A169277

456 P3d 363

Appellant seeks reversal of the judgment committing her to the Mental Health Division for a period not to exceed 180 days, challenging only the trial court's conclusion, under ORS 426.130(1)(a)(A), that she would neither cooperate with nor benefit from voluntary treatment. *Held*: The record supported the trial court's conclusion that appellant had failed to establish that she was willing and able to participate in voluntary treatment and would probably do so.

Affirmed.

Maurice K. Merten, Judge.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

ORTEGA, P. J.

Affirmed.

## ORTEGA, P. J.

Appellant seeks reversal of the judgment committing her to the custody of the Mental Health Division for a period not to exceed 180 days. ORS 426.130(1)(a)(C). Appellant does not challenge the conclusion that she has a mental illness; instead, she argues that the trial court erred in concluding that she was unwilling to participate in voluntary treatment. ORS 426.130(1)(a)(A). Because we conclude that the record supports the trial court's conclusion that appellant failed to meet her burden of establishing by a preponderance of the evidence that she was willing and able to participate in voluntary treatment and will probably do so, we affirm.

Neither party has requested *de novo* review, and we do not view this as an exceptional case warranting such review. *See* ORAP 5.40(8)(c). Therefore, we review the sufficiency of the evidence supporting appellant's commitment for legal error and are "bound by the trial court's findings of historical fact that are supported by any evidence in the record[.]" *State v. R. E.*, 248 Or App 481, 483, 273 P3d 341 (2012). We state the relevant facts "consistently with the trial court's express and implied findings, as supplemented with uncontroverted contextual information from the record." *State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010) (citation and internal quotation marks omitted).

Appellant had a history of mental health issues (recurrent and severe major depression and borderline personality disorder) and suicide attempts. In the events leading up to her hospitalization, police responded to appellant's house after a medical staff person reported that appellant had disclosed plans to commit suicide. Upon arriving, police found a loaded rifle and several bottles of medication inside appellant's house. After investigating the scene and asking appellant regarding her suicide plans, the police believed she would carry out her plans and took her into custody. A certified mental health investigator concluded that appellant would not benefit from a program of voluntary treatment and recommended that she remain in custody.

At the commitment hearing, the state presented evidence that, in the last year alone, appellant had attempted suicide at least six times, and her son had intervened by removing guns from her home following numerous suicide threats. During the current hospitalization, appellant continued to express suicidal thoughts, including the night before the hearing, when she had informed a social worker that "she continued to feel suicidal and wanted to get a gun and kill herself after discharge." Additionally, Dr. Streck, appellant's evaluating psychiatrist, testified that there was little improvement in her condition. Although Streck had doubled her medication dosage, appellant had reported "feel[ing] about the same as she did when she came into the hospital." Appellant's condition, combined with her history of suicide attempts, led Streck to determine that, without continued treatment, "she'll end her life."

Appellant testified against commitment, stating that she was feeling better than when she first arrived at the hospital and that she was taking all her medications as prescribed. Appellant felt that her medications were "starting to kick in" despite several previous issues with her dosage and stated that she was interested in voluntary treatment and preferred to be at home rather than at the hospital. Ultimately, the trial court concluded that appellant would neither cooperate with nor benefit from voluntary treatment; therefore, it committed her to the Mental Health Division against her will.

On appeal, appellant argues that she met her burden of proving by a preponderance of the evidence that she was willing and able to and would probably participate in voluntary treatment. Appellant maintains that she would continue to work with a psychiatrist and a therapist in the community if released from the hospital. Appellant argues that the trial court provided no reason for its conclusion that she would not comply with voluntary treatment.

If the court determines that a person is mentally ill based upon clear and convincing evidence, the court must order the person's release and dismiss the case if the person is "willing and able to participate in treatment on a voluntary basis" and the court finds that "the person will

probably do so." ORS 426.130(1)(a)(A)(i) - (ii). The mentally ill person has the burden of establishing the foregoing by a preponderance of the evidence. *State v. T. M.*, 229 Or App 325, 330-31, 211 P3d 359 (2009).

Appellant argues that her case is analogous to *State v. M. C. M.*, 212 Or App 158, 157 P3d 308 (2007), in which we reviewed *de novo* and reversed because the record demonstrated that the appellant was willing to engage with voluntary treatment, was capable of doing so, and probably would do so. However, *M. C. M.* is distinguishable from this case. There, the trial court committed the appellant based in part on its concern that he would be homeless upon release, a rationale that we stated was irrelevant to the inquiry under ORS 426.130(1)(a)(A). *Id.* at 161. Here, nothing suggests an inappropriate basis for the trial court's commitment determination.

Moreover, in *M. C. M.*, we concluded on *de novo* review that the appellant presented an objectively viable plan to "provide for his own welfare, including remaining under the care of his primary physician." *Id.* Here, by contrast, although appellant testified that she was willing to engage in voluntary treatment, the trial court was entitled to disbelieve her testimony given the other evidence in the record— including her statement the night before the hearing that she would kill herself upon release. A court is not required to release a mentally ill person merely because the person has expressed a willingness to engage in voluntary treatment. Here, the evidence in the record supports the trial court's finding that appellant would neither cooperate with nor benefit from voluntary treatment. It follows that the trial court did not err by committing appellant.

Affirmed.