Submitted November 18, 2019, reversed January 29, 2020

In the Matter of J. G.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

J. G.,
*Appellant.*

Lane County Circuit Court
19CC00227; A169916

458 P3d 721

Appellant seeks reversal of a judgment committing her to the Mental Health Division of the Oregon Health Authority for up to 180 days. She argues that the evidence was legally insufficient for the trial court to find her to be a person with a mental illness, specifically a person who, due to a mental disorder, was dangerous to others. *See* ORS 426.130; ORS 426.005(1)(f)(A). *Held*: The trial court erred in ordering commitment, because the evidence was legally insufficient to establish that appellant was dangerous to others as a result of her mental disorder. The only evidence of dangerousness to others was a single incident, which occurred in the hospital four days prior to appellant's hearing, in which appellant punched another patient once in the back. On this record, the trial court erred in treating that incident as predicative of future violence, particularly future violence in the narrow range of serious and highly probable threats of harm necessary for an involuntary commitment, rather than an isolated incident.

Reversed.

Maurice K. Merten, Judge.

Lindsey Burrows and O'Connor Weber LLC filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed.

**AOYAGI, J.**

Appellant seeks reversal of a judgment committing her to the Mental Health Division of the Oregon Health Authority for up to 180 days. She argues that the evidence was legally insufficient for the trial court to find her to be a person with a mental illness, specifically a person who is dangerous to others due to a mental disorder. *See* ORS 426.130; ORS 426.005(1)(f)(A). For the reasons that follow, we agree with appellant and, accordingly, reverse.

We state the facts in the light most favorable to the trial court's disposition. *State v. L. R.*, 283 Or App 618, 619, 391 P3d 880 (2017) (standard for non-*de novo* review). Our task is to determine whether the record, so viewed, is sufficient to meet the legal standard for involuntary commitment. *Id.* In this case, the record consists of appellant's testimony; the testimony of Hicks, a psychiatric nurse practitioner who treated appellant during her hospitalization; and the precommitment report and its attachments, which were admitted at the hearing without objection. The precommitment investigator was present at the hearing but did not testify. *See* ORS 426.095(4)(d) (providing for admission of the precommitment report into evidence, subject to objection, but requiring that the investigator be present to be cross-examined unless the investigator's presence is waived by the person alleged to have a mental illness or the person's counsel).

Appellant has been diagnosed with bipolar disorder with severe manic episodes and psychotic features. Appellant lacks insight into her condition and believes that her only mental health concern is post-traumatic stress disorder from her military service. At the time of the hearing, appellant was taking medication but did not intend to continue taking medication if released.

Appellant was brought to the hospital by police "due to worsening symptoms of mental illness," after she "had been showering for hours [one] day, flooded her apartment, and rubbed her skin raw in areas due to excessive cleansing and scrubbing." While in the hospital, appellant continued to believe that her skin was covered in "dirt and poop" and constantly washed it, although not to the point of causing

serious physical harm. She was "dysphoric, irritable, suspicious, paranoid," and "minimizing or denying of the symptoms that led to her hospitalization." She believed that staff were unfair to her and that other patients mistreated her. Particularly relevant here, three days after admission (and four days before the hearing), appellant "punched" another patient, who was "a pretty big guy," once in the back with a closed fist, when he reached for a newspaper near her food tray. In Hicks' view, appellant misinterpreted the other patient's behavior as threatening, because of her irritability and paranoia. Hicks was not aware of any other incidents of violence. There is no reference to violence or threats in the precommitment report or its attachments, except that a chart note from the day after the punching incident includes a statement that, "[p]er staff report, patient is anxious, angry, demanded to be released, argumentative, speaking aggressively, threatening, dismissive, and agitated. Refusing scheduled medications."

At the conclusion of the hearing, the trial court found that appellant has a mental disorder and that, due to that mental disorder, she is dangerous to others.[1] *See* ORS 426.130 (providing for commitment of a "person with mental illness"); ORS 426.005(1)(f)(A) (defining "[p]erson with mental illness" to include "a person who, because of a mental disorder, is * * * [d]angerous to self or others"). On appeal, appellant does not contest that she has a mental disorder, but she argues that the court erred in finding that it makes her dangerous to others. She asserts that the "punching" incident was an isolated incident that was not predictive of future violence and notes, among other things, that there was no evidence that she harmed the other patient or intended to harm him.

"ORS 426.005 precludes a court from committing a person on the basis of a mental disorder alone." *State v. Miller*, 198 Or App 153, 161, 107 P3d 683 (2005). Rather, as relevant here, the state had to prove by clear and convincing evidence that appellant's mental disorder made her dangerous to others at the time of the hearing. ORS 426.130(1)(a);

---

[1] The state had also argued that appellant was dangerous to herself, but the trial court found that the state did not prove that allegation.

*see also State v. J. T. C.,* 284 Or App 38, 39, 392 P3d 754, *rev den*, 361 Or 645 (2017) (clear and convincing evidence is a 'rigorous' standard of proof that requires 'evidence that is of extraordinary persuasiveness, and which makes the fact in issue highly probable' (citation omitted)). Specifically, the question is whether she was dangerous to others "as a result of [her] condition at the time of the hearing as understood in the context of [her] history." *State v. M. R.*, 225 Or App 569, 574, 202 P3d 221 (2009) (internal quotation marks omitted).

"Although 'dangerous' is a common term that, in ordinary usage, may refer to a broad range of threats, the type of 'danger' necessary to justify an involuntary civil commitment is a narrow range of serious and highly probable threats of harm." *State v. S. R. J.*, 281 Or App 741, 749, 386 P3d 99 (2016). Also, "actual future violence" must be "highly likely." *State v. L. D.*, 247 Or App 394, 400, 270 P3d 324 (2011). "Conclusions based on conjecture as to whether appellant poses a danger to others are insufficient." *State v. M. A.*, 276 Or App 624, 629, 371 P3d 495 (2016) (citation omitted).

This case involves a single known act of violence. Except for the "punching" incident, there was no evidence presented at the hearing of appellant having engaged in any other acts of violence in the past or during her hospitalization. There also was no evidence presented of appellant threatening to harm anyone in the past or during her hospitalization—except for a summary reference in a chart note to a "staff report" of appellant being "anxious, angry, demanded to be released, argumentative, speaking aggressively, threatening, dismissive, and agitated," which adds little to the analysis given the lack of further detail or explanation.[2]

A single violent act may be sufficient to establish that a person is dangerous to others, if the circumstances

---

[2] An unidentified staff person's description of appellant as "speaking aggressively" and "threatening," without any indication what appellant actually *said* or *did*, has little value in predicting appellant's future dangerousness. The state did not draw attention to the chart note at appellant's hearing, the trial court did not refer to it, and the state does not cite it on appeal. We therefore focus our attention on the "punching" incident, which is consistent with how the state argued the case below and argues it on appeal.

of the act, the person's history, or other contextual evidence allows the court to rely on the act to predict future dangerousness. *See L. R.*, 283 Or App at 625. However, an "isolated" violent act, without more, is not enough.[3] *State v. A. M. R.*, 236 Or App 186, 191, 235 P3d 720 (2010). For example, in *State v. T. M.*, 296 Or App 703, 705-06, 437 P3d 1197 (2019), we held that the evidence was insufficient to find that the appellant was dangerous to others, where she raised a fire poker over her head, advanced toward her ex-husband (who was also her roommate and caretaker), and said that she would kill him, precisely because of the isolated nature of that incident. Again, a single violent act may be enough, but only if the evidence is sufficient to establish that the act is predictive of future dangerousness of the type necessary to justify an involuntary civil commitment, rather than an isolated incident.

The state relies on *State v. T. T.*, 293 Or App 376, 385, 428 P3d 921 (2018), to argue that the evidence here was sufficient to establish appellant's dangerousness to others, where appellant's single violent act was paired with "unabated symptoms that included psychosis, lack of willingness to take medication, lack of insight into her condition, and impaired judgment." We disagree that *T. T.* is comparable to this case. Although fact-matching is of little utility in commitment cases, *see id.* at 384, it is notable that, in *T. T.*, the appellant had stabbed her husband in the hand with a knife, she continued to believe at the time of the hearing that "the threat had been real and needed to be neutralized," and she gave various explanations for stabbing him, including because of "a covenant" and because "voices told her to do it." *Id.* at 385. The appellant also had "reported at the hospital that she had, in fact, had thoughts

---

[3] To be clear, overt acts of violence are not necessary to establish dangerousness to others. Verbal threats may be enough in appropriate circumstances. *See State v. Bodell*, 120 Or App 548, 550, 853 P2d 841 (1993) ("Specific acts of violence are not required to establish that appellant is dangerous, as long as there is ample evidence to form a foundation for predicting future violent behavior." (Internal quotation marks omitted.)); *see also M. A.*, 276 Or App at 629 ("Past acts, including verbal acts, can justify a finding of dangerousness, so long as the acts clearly form a foundation for predicting future dangerousness." (Internal quotation marks omitted.)). However, there was no evidence of threats of physical violence in this case, so we limit our discussion accordingly.

about hurting others." *Id*. On that record, we found that the evidence formed a sufficient basis on which to predict future dangerousness. *Id*.

This case is significantly different. Appellant committed one act of violence while in the hospital—a single punch to someone's back. She did not use a weapon. It is unknown how much force she used. It is unknown whether the punch caused any pain or injury to the recipient, who was a "pretty big guy." And there is no evidence that appellant has ever engaged in any other act of violence or ever threatened anyone with physical violence. It is important to recall that, in the context of involuntary civil commitment, "dangerous" refers to "a narrow range of serious and highly probable threats of harm," *S. R. J.*, 281 Or App at 749, and "actual future violence" must be "highly likely," *L. D.*, 247 Or App at 400. Finally, although appellant's bipolar disorder has psychotic features, there is no evidence that she harbors thoughts about hurting people, has ever been urged by voices to hurt someone, or has resorted to violence in the past when suffering from psychosis or experiencing paranoia.

The state further argues that the fact that the "punching" incident occurred only four days before the hearing makes it particularly potent evidence of appellant's dangerousness to others. We disagree, at least in these circumstances. It is certainly true that the court must assess a person's dangerousness at the time of the hearing, *M. R.*, 225 Or App at 574, so more recent evidence may be more compelling than older evidence. And any evidence related to a person's present hospitalization will necessarily be recent, given the short timeline to hold a commitment hearing. However, appellant was not brought to the hospital due to any violence toward others, and a single violent act may be an isolated incident even if it occurs in the hospital.

Ultimately, we conclude that the single incident of appellant punching another patient once in the back while in the hospital, without more, was not enough for the trial court to predict a high likelihood of actual future violence by appellant if released, particularly "the type of danger necessary to justify an involuntary civil commitment," which

"is a narrow range of serious and highly probable threats of harm." *S. R. J.*, 281 Or App at 749. On this record, we reverse.

      Reversed.