Argued and submitted March 11, affirmed September 16, 2020

In the Matter of M. J. F.,
a Person Alleged to have Mental Illness.
## STATE OF OREGON,
*Respondent,*

*v.*

## M. J. F.,
*Appellant.*

### Yamhill County Circuit Court
19CC02302; A171146

473 P3d 1141

Appellant in this civil commitment case appeals an order committing him to the Oregon Health Authority for a period not to exceed 180 days. On appeal, appellant asserts that the trial court erred in determining that he was a danger to himself because there was insufficient evidence in the record that appellant was likely to harm himself. *Held*: The record was sufficient to permit a rational trier of fact to conclude that it was highly probable that appellant presented a danger to himself.

Affirmed.

Jennifer K. Chapman, Judge.

Alexander C. Cambier argued the cause for appellant. Also on the brief was Multnomah Defenders, Inc.

Kirsten M. Naito, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and Powers, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Appellant seeks reversal of an order involuntarily committing him to the Oregon Health Authority for up to 180 days, arguing that the evidence was insufficient to prove that he suffered from a mental disorder that makes him dangerous to himself or others. *See* ORS 426.130(1)(a)(C), (2). Because the record was legally sufficient to support the trial court's conclusion, we affirm.

Unless we exercise our discretion to review an order of civil commitment *de novo* (which we do not here), "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. T. Y.*, 285 Or App 21, 22, 396 P3d 986 (2017) (quoting *State v. M. A.*, 276 Or App 624, 625, 371 P3d 495 (2016) (internal quotation marks omitted)). Additionally, we are "bound by the trial court's findings of historical fact that are supported by any evidence in the record[.]" *State v. M. J. M.*, 301 Or App 638, 639, 456 P3d 363 (2020) (quoting *State v. R. E.*, 248 Or App 481, 483, 273 P3d 341 (2012)). We state the facts in light of that standard of review.

On April 9, 2019, appellant called emergency services and asked to be transported to the hospital. He reported to emergency department staff that he was very depressed and that he wanted to kill his roommate by using one of the guns he owned. He further reported that he had been contemplating killing himself for the past seven weeks and that those thoughts occurred to him multiple times each day, lasting for between one and four hours each time that they occurred. He explained that voices in his head were telling him to kill himself and that God was telling him that his life was over and he needed to die so that he could "come home." Appellant also reported that he had attempted suicide by drug overdose one to two weeks before that hospital visit and that he had recently gone to a bridge and wanted to jump off. His plan at the time of his admission was to take his own life by jumping off a bridge or using one of his guns. Medical records confirmed that appellant had been hospitalized twice in the two months prior to this hospital

visit for suicidal ideations, including an attempt to take his own life by overdosing on pills two weeks earlier.

Appellant spent the next few weeks in the hospital and frequently reported both suicidal and homicidal ideations. On April 21, he demanded his release from the hospital, but his providers were concerned about his safety, and civil commitment proceedings were commenced. After holding a hearing, the trial court determined that appellant posed a danger to both himself and others and ordered him committed to the authority of the Oregon Health Authority for 180 days.[1]

Under Oregon law, a person may be involuntarily committed if the person is determined to be "a person with mental illness." ORS 426.130(1)(a)(C). As relevant here, a "person with mental illness" is someone who suffers from a "mental disorder" and, as a result of that disorder, is "[d]angerous to self ***." ORS 426.005(1)(f)(A). Before the trial court, appellant did not dispute that he suffers from a mental disorder, but he maintained that he is not dangerous to himself. Appellant makes the same argument on appeal.

"[W]hether the evidence is sufficient to support a determination that appellant is a danger to [self] is a question we review as a matter of law." *T. Y.*, 285 Or App at 24. For purposes of ORS 426.005(1)(f), a person is dangerous to self "if the person's mental disorder would cause him or her to engage in behavior that is likely to result in physical harm to [self] in the near term." *State v. B. B.*, 240 Or App 75, 82, 245 P3d 697 (2010) (internal quotation marks omitted). That determination requires evidence that the person's mental disorder "has resulted in harm or created situations likely to result in harm in the near future." *Id*. (Internal quotation marks omitted.) The threat of "potential harm must be more than speculative." *T. Y.*, 285 Or App at 25 (internal quotation marks omitted).

The record here is legally sufficient to support the trial court's decision that, at the time of the hearing,

---

[1] Because we agree with the trial court's conclusion that appellant posed a danger to himself, we do not address whether appellant also posed a danger to others.

appellant posed a danger to himself. During his hospitalization, appellant frequently discussed suicidal ideations. According to appellant's medical records, he reported that he wanted to take his own life on four of the seven days leading up to the civil commitment hearing. He had a specific plan that he communicated to hospital staff—that he would use a gun or jump off a bridge. The day before he signed the form requesting his release, he reported that he was thinking about suicide "all the time" and that "he intended to act on these thoughts after he left the hospital." At the hearing, when appellant was asked if he continued to have such thoughts, he responded that he was "not sure."

The record also indicates that appellant took two specific actions that put his life at risk. First, appellant reported to emergency room personnel that he had recently visited a bridge and considered jumping. Second, two weeks prior to his visit to the emergency room, appellant was hospitalized for attempting suicide by drug overdose.

Although our case law cautions against "fact-matching" when evaluating whether an appellant is a danger to self, *see, e.g.*, *State v. J. G.*, 302 Or App 97, 101, 458 P3d 721 (2020), one principle can readily be drawn: A present threat to commit suicide, coupled with a recent attempt to enact that threat through overt action, can be sufficient to demonstrate that the person's mental disorder has resulted in "harm" sufficient to constitute a danger to self. *State v. S. R. J.*, 281 Or App 741, 751, 386 P3d 99 (2016) (recognizing that "we have often required evidence that the delusional behavior either led to past harm or to narrowly averted past harm"). Indeed, our cases frequently identify a shortfall in the state's evidence of dangerousness when a person who *expresses* suicidal thoughts has not recently *attempted* suicide. *See, e.g.*, *State v. N. A. P.*, 216 Or App 432, 439-40, 173 P3d 1251 (2007) (applying *de novo* review, we recognized that "a statement that one wants to die or wants staff to kill one, especially with no history of suicide attempts, is not tantamount to an assertion that one intends to inflict self-harm in the near future"); *State v. M. S.*, 180 Or App 255, 258, 42 P3d 374 (2002) (applying *de novo* review, reversing a judgment of commitment where the appellant had stated that she wanted to die but had not "attempted suicide lately").

By contrast, in this case, appellant expressed suicidal ideations multiple times in the days leading up to the hearing, did not disavow those desires during the hearing, had taken a specific act of visiting a bridge to carry out those ideations immediately prior to his hospitalization, and had overdosed in a suicide attempt a few weeks prior to the current hospitalization.

Citing cases in which we employed *de novo* review, appellant argues that there is not clear and convincing evidence—that is, evidence of "extraordinary persuasiveness"—that appellant is likely to cause himself harm, and we should therefore reverse the trial court's decision. *See N. A. P.*, 216 Or App at 437 ("The clear and convincing evidence standard of proof requires evidence that is of extraordinary persuasiveness, so that the fact at issue is highly probable." (Quoting *State v. Allen*, 209 Or App 647, 652, 149 P3d 289 (2006) (internal quotation marks omitted).)). However, appellant's argument seeks a misapplication of the clear and convincing standard.

Although it uses the word "evidence," the clear and convincing evidence standard is not a description of the credibility or believability of the evidence; it is a standard of proof. Indeed, it is the "intermediate" of the three standards of proof—preponderance, clear and convincing, and beyond a reasonable doubt. *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or 390, 402, 737 P2d 595 (1987); *see also Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026 (1958) (recognizing that each standard represents a "different degree of proof"). These standards can be represented as "degrees on a graduated scale, with 'preponderance' at the lowest end of the scale, 'reasonable doubt' at the highest end, and 'clear and convincing' in the middle." *Cook*, 214 Or at 527. The preponderance standard requires that the factfinder "believe that the facts asserted are more probably true than false; *** and proof 'beyond a reasonable doubt' means that the facts asserted are almost certainly true." "Clear and convincing" falls in the middle and requires that "the truth of the facts asserted is highly probable." *Id*. Accordingly, in this case, the trial court was tasked with applying that intermediate standard of proof to determine whether the evidence demonstrated that it is highly probable that appellant presents a danger to himself.

Our role, however, is different. As the reviewing court, we look at the evidence as a whole, in the light most favorable to the trial court's decision, to determine whether a rational factfinder could reach that decision. *T. Y.*, 285 Or App at 22. As with "our review [of] rulings on motions for directed verdicts or motions for judgment of acquittal, our function is limited to determining whether the evidence was sufficient to permit the challenged determination." *Dept. of Human Services v. N. P.*, 257 Or App 633, 640, 307 P3d 444 (2013); *see also State v. King*, 307 Or 332, 339, 768 P2d 391 (1989) (recognizing that, in evaluating the sufficiency of the evidence in a criminal case, "[o]ur decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury so to find"). Thus, the question for us as the reviewing court is whether a rational factfinder "could have found" that it was highly probable that appellant presented a danger to himself. *State v. J. D. S.*, 242 Or App 445, 448, 263 P3d 1017 (2011).

Appellant contends that there is not "extraordinarily persuasive" evidence to prove that he presents a danger to himself, arguing, for example, that his statements that he has access to firearms lack "corroboration." Accepting this argument would require us to evaluate each piece of evidence to determine its persuasiveness. That evaluation is exclusively the province of the initial factfinder or an appellate court reviewing the evidence *de novo. N. P.*, 257 Or App at 640 ("Our non-*de novo* appellate review function does not allow us to substitute our assessment of the persuasiveness of the evidence for the [initial factfinder's] ***."); *see also J. D. S.*, 242 Or App at 447-48 ("[W]e do not reweigh the evidence to determine anew whether there is clear and convincing evidence that appellant is a danger to himself or others.").

To be sure, some of our cases mention the "extraordinary persuasiveness" of the evidence. *See, e.g.*, *State v. E. D.*, 264 Or App 71, 73, 331 P3d 1032 (2014) ("The clear and convincing evidence standard is a rigorous one, requiring evidence that is of extraordinary persuasiveness, and which makes the fact in issue highly probable." (Quoting *State v. M. R.*, 225 Or App 569, 574, 202 P3d 221 (2009).)). However, these references to the "persuasiveness" of the

evidence do not imply that we are weighing the evidence anew, but rather recognize that the clear and convincing standard explicates the burden of persuasion. That recognition does not alter our standard of appellate review. *See id.* at 72 (confirming that "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome" (quoting *N. P.*, 257 Or App at 639)). And, as we have repeatedly recognized, that standard of review does not allow us to substitute our assessment of the persuasiveness of the evidence for that of the trial court.

Resolving all inferences in favor of the trial court's disposition, this record is undoubtedly sufficient to permit a rational trier of fact to conclude that it is highly probable that appellant presents a danger to himself for purposes of ORS 426.130.

Affirmed.