Submitted May 3, 2019, reversed October 14, 2020

In the Matter of A. C.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

A. C.,
*Appellant.*

Lane County Circuit Court
18CC03231; A168312

475 P3d 919

Appellant appeals a judgment committing him to the Mental Health Division for a period not to exceed 180 days, based on a finding that appellant suffers from a mental disorder and is a danger to himself and others. ORS 426.130; ORS 426.005(1)(f)(A). He contends that the evidence is insufficient to support the trial court's finding, based on the opinion of the hospital's psychiatrist, that appellant is a danger to himself or others because he will not take anti-psychotic medication if he is not committed. *Held*: The hearing record does not contain sufficient evidence from which it could be found that appellant was a danger to himself or others at the time of the hearing or that he would become a danger to himself or others if he did not take medication, and the trial court's finding that he was a danger to himself or others was purely speculative.

Reversed.

Maurice K. Merten, Judge.

Alexander C. Cambier and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Keith L. Kutler, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

Reversed.

**ARMSTRONG, P. J.**

Appellant appeals a judgment committing him to the Mental Health Division for a period not to exceed 180 days, based on a finding that appellant suffers from a mental disorder and is a danger to himself and others. ORS 426.130; ORS 426.005(1)(f)(A). We conclude that the evidence does not support the trial court's finding that appellant is a danger to himself or others. We therefore reverse.

In this case, because we do not exercise our discretion to review the record *de novo*, we view the evidence and permissible derivative inferences in the light most favorable to the trial court's disposition and assess whether the record was legally sufficient to permit the trial court's determination. *State v. T. Y.*, 285 Or App 21, 22, 396 P3d 986 (2017). We are bound by the trial court's findings of historical fact that are supported by any evidence in the record. *State v. M. J. M.*, 301 Or App 638, 639, 456 P3d 363 (2020).

Appellant is 30 years old and has a history of autism spectrum disorder. He has lived with his father since he was an infant. Appellant's father testified at the hearing that the episode giving rise to the commitment arose on July 10, 2018, when appellant experienced disappointment and stress when a family trip had to be cancelled, leading him to react by pacing and ranting with speech that was loud and angry. The father testified that, although the pacing and ranting were common behaviors for appellant, he had never seen appellant so agitated. Appellant did not become violent to his father but picked up a potato from a dumpster and threw it at a tree. The father testified that he became concerned that appellant was disturbing the neighbors in their apartment complex and that he would unintentionally hurt himself. He called "CAHOOTS," a mental health crisis intervention program. A CAHOOTS van came and took appellant to the hospital emergency department. Appellant's father testified that appellant is not dangerous to him and that he would be comfortable taking him home. He testified that he had already scheduled a meeting with outpatient services and that he is willing to do whatever is necessary for appellant.

       Dr. Strek, the hospital's staff psychiatrist, did not treat appellant but saw him once, on July 22, the day before the hearing, and reviewed records from the hospital's emergency department. He testified that appellant's diagnosis at admission was "atypical psychosis." He testified from the records that, when appellant arrived at the hospital emergency department, he was agitated and experiencing psychotic symptoms and asking for a "lethal injection." Appellant declined to take oral medications, and hospital staff administered injections of an anti-psychotic drug to calm appellant so that he did not harm himself or hospital staff. Strek testified that, over a period of several days in the emergency department, appellant had been kicking a bench and banging his head against a wall, but that appellant improved rapidly with medication. Strek described appellant's behavior as a psychotically driven exacerbation of behaviors that people with autism may have when they are overwhelmed. He testified that appellant is not currently a danger to others and was not currently displaying the symptoms that caused him to be a danger to himself when he came into the emergency department. Strek testified that he asked appellant if he would be willing to stay at the hospital a bit longer to transition to oral medications, but that appellant declined and said he wanted to go home. When asked by the court, Strek offered the opinion that, because of appellant's request for a lethal injection and his unwillingness to take oral medication, appellant is a danger to himself.[1]

       Appellant testified that he is no longer a danger to himself and that he just needs a little help. He testified that he is willing to engage in outpatient therapy.

       The trial court stated that it did not believe that the appellant would cooperate with and benefit from a program of voluntary outpatient treatment. The court committed appellant based on the determination that appellant was a danger to himself or others. The court also found that

_____

   [1] Strek testified:

   "I do think he is a danger to himself. At least when he came in, he was requesting a lethal injection to die because he had these psychotic symptoms of having this conflict in his head between god and Lucifer or the devil. He was screaming outside of his apartment complex."

appellant was able to provide for his basic personal needs but was not receiving such care as necessary for his health or safety without intervention.

Appellant appeals, contending that the evidence is insufficient to support the trial court's finding that he is a danger to himself or to others. The state concedes that the evidence is not legally sufficient to support the trial court's determination that appellant was a danger to others but urges affirmance, contending that there is sufficient evidence that appellant was a danger to himself from head banging on the day he was admitted and that, although appellant had improved at the hospital with injected anti-psychotic medications and was not dangerous on the day of the hearing, he is still a danger to himself because of his unwillingness to take medications in pill form if released from commitment.

A person may be involuntarily committed if there is clear and convincing evidence that the person has a mental illness. ORS 426.130(1)(a). A person has a mental illness if, because of a mental disorder, the person is "dangerous to self" or others, ORS 426.005(1)(f)(A), is unable to provide for basic personal needs, ORS 426.005(1)(f)(B), or meets the criteria for mental illness set forth in ORS 426.005(1)(f)(C). For purposes of ORS 426.005(1)(f), a person is "dangerous to self" "if the person's mental disorder would cause him or her to engage in behavior that is likely to result in physical harm to [self] in the near term." *State v. B. B.*, 240 Or App 75, 82, 245 P3d 697 (2010) (quoting *State v. Olsen*, 208 Or App 686, 691, 145 P3d 350 (2006)). The threatened harm must be more than speculative and must, at minimum, involve "actual physical harm" that is "serious." *T. Y.*, 285 Or App at 25.

Whether evidence is sufficient for commitment is a question of law that must be decided on the facts contained in the record. *See State v. A. D. S.*, 258 Or App 44, 45, 308 P3d 365 (2013); *State v. King*, 177 Or App 373, 378, 34 P3d 739 (2001). Without a basis of fact in the record, an examiner's conclusion is not enough to support commitment. *See State v. M. B.*, 300 Or App 522, 529, 452 P3d 1006 (2019).

We accept the state's concession that appellant is not a danger to himself. And we further conclude that the record does not contain legally sufficient evidence to support Strek's opinion and the trial court's finding that appellant was a danger to himself. Strek's opinion depended on his assumption that, because appellant's behavior improved when he received anti-psychotic medication, appellant needed that medication in order to prevent him from having another atypical psychotic episode. But the record does not contain evidence from which it could be found that appellant's psychotic episode, apparently brought on by an incident causing stress and disappointment, was likely to recur without medication. Strek's opinion also depended on the assumption that, without the medication, appellant would cause himself harm. But the record does not contain evidence from which it could be found that appellant harmed himself during the behavior that led his father to call CAHOOTS or during his head banging in the emergency department, or that he was a danger to himself at the time of the hearing. The trial court's finding that he would become a danger to himself if he did not take medication is not supported by legally sufficient evidence in the record and was purely speculative. *See State v. M. J. F.*, 306 Or App 544, 548, 473 P3d 1141 (2020) (explaining distinction between the "clear and convincing" standard of proof applied by a trial court in determining persuasiveness and the appellate court's evaluation of the record for legal sufficiency of evidence). Accordingly, the trial court erred in committing appellant.

Reversed.