Argued and submitted December 4, 2020, affirmed October 27, 2021, petition for review denied April 21, 2022 (369 Or 675)

In the Matter of J. D., aka J. P. D.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

J. D.,
aka J. P. D.,
*Appellant.*

Marion County Circuit Court
19CC04930; A172436

499 P3d 113

Appellant appeals a judgment of the trial court civilly committing him to the custody of the Oregon Health Authority for up to 180 days based on the court's determination that he has a mental disorder that makes him dangerous to himself and to others. Appellant does not dispute that he has a mental disorder but contends that the evidence is insufficient to demonstrate that, because of his mental disorder, he presents a danger to himself or others that permits commitment under ORS 426.130(1)(a)(C) and (2). Appellant also challenges the trial court's determination, under ORS 426.130(1)(a)(A), that it was unlikely that he was willing and able to participate in treatment voluntarily. *Held*: The evidence was sufficient to allow the trial court to find, by clear and convincing evidence, that it was highly probable, at the time of the hearing, that appellant posed a danger to others; thus, the Court of Appeals did not need to address appellant's contention that the trial court erred in determining that he was also a danger to himself. The Court of Appeals also held that the evidence was sufficient to allow the trial court to find, by a preponderance of the evidence, that, if released, appellant would not be willing or able to engage in treatment voluntarily.

Affirmed.

Benjamin S. Johnston, Judge pro tempore.

Alexander C. Cambier argued the cause for appellant. Also on the brief was Multnomah Defenders, Inc.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Affirmed.

**ARMSTRONG, P. J.**

Appellant appeals a judgment of the trial court civilly committing him to the custody of the Oregon Health Authority for up to 180 days based on the court's determination that he has a mental disorder that makes him dangerous to himself and to others. ORS 426.130; ORS 426.005 (1)(f)(a) (defining a person with "mental illness"). Appellant does not dispute that he has a mental disorder but contends that the evidence is insufficient to demonstrate that, because of his mental disorder, he presents a danger to himself or others that permits commitment under ORS 426.130 (1)(a)(C) and (2). We conclude that the evidence was sufficient and therefore affirm.

Appellant has been diagnosed with a bipolar disorder.[1] Appellant has financial resources and is of extremely high intelligence. He has a primary care mental health professional whom he sees regularly. He has no history of violence. There is no evidence that appellant has ever attempted to carry out verbal threats of physical violence. There is no evidence that appellant has a gun.

There is evidence that, in the month before he was placed on an involuntary hold, appellant's mental health disorder caused him to engage in disruptive behaviors in the neighborhood where he lives. He started small fires in the street and threatened to stab passers-by if they came too close, and he screamed and yelled and was verbally aggressive. Appellant also verbally threatened to kill a bank teller. Further, during a visit with a mental health clinician from the Behavioral Health Unit of the Portland Police Department, appellant pounded on a table with his hand and held a golf club in a menacing manner but did not swing the club or otherwise directly threaten the clinician or anyone else.

Appellant believes that the police are targeting and harassing him, and he has verbalized general threats to kill them.[2] He also told one police officer that he would put a

---

[1] Appellant has also been diagnosed with high-functioning autism spectrum disorder.

[2] A police officer testified that he overheard appellant describe a plan outside of the Multnomah County Courthouse to bail out "the worst of the worst" from the Multnomah County Detention Center with the intent of arming them with guns so that they could fight against and kill police.

gun to the officer's head and kill him, although he did not have a weapon. There is evidence that appellant attempted to enter a gun show with the goal of purchasing 150 rounds of ammunition. At the hospital, appellant asked to be placed in seclusion because of his belief that he might harm someone. He declined medication, explaining that it blunts his cognitive abilities.

The emergency room psychiatrist who examined appellant when he came to the hospital the day before the commitment hearing testified that she believed that appellant was "experiencing mania possibly with psychotic features" and that, if he were released on the day of the hearing, he would pose a moderate to high risk to others. Several other witnesses testified that they believed that appellant's behavior was escalating to violence.[3] Two examiners appointed by the court submitted reports and agreed with

_____

[3] At the hearing, the state offered the testimony of several witnesses who had had interactions with appellant, including two police officers, a mental health clinician, and the emergency room psychiatrist who had admitted appellant. Two examiners provided reports and questioned appellant at the hearing.

An officer with the Portland Police Bureau testified that she was on a security assignment at the Expo Center when she was flagged down by other security personnel to help resolve a situation with appellant, who was attempting to gain access to a gun show. The officer spoke with appellant, who told her that he had wanted to go to the gun show to buy 150 rounds of ammunition but that he had been denied entry because of his service animal—a ferret. The officer was concerned about appellant's interest in buying ammunition, because she saw indications that he had mental health issues.

The next day, an officer with the Portland Police Bureau's behavioral health unit brought appellant into custody after an encounter at a bank, where appellant was threatening a bank teller. The officer testified that, although appellant had no history of violence, he believed, based on appellant's verbal threats and his escalating and unpredictable behaviors, that appellant was headed for violent behavior and, for that reason, was a danger to himself and to others.

A mental health clinician with the Portland Police Bureau's behavioral health unit accompanied the officer to the bank. She testified that she had an interaction with appellant at the bank, where she was able to help appellant calm down. But afterwards she accompanied appellant at his mental health provider's clinic, where, in an agitated and escalated state, appellant held a golf club in one hand in a menacing way and hit his other hand on a table. The witness testified that appellant told her that he could obtain guns, which were being sent to him from Texas. The witness's observations led her to conclude that appellant's recent deviation from his past baseline of mental-health-related behaviors was "moving further on the pathway of targeted violence." Based on appellant's manic state, ideas of grandeur, persecutory delusional belief system, expressed desire to kill law enforcement officers, and financial means to have access to weapons, the witness testified that she believed that appellant posed a risk of harm to himself and to others.

other witnesses that appellant's behavior was escalating to violence and opined that the danger posed by appellant was "extraordinarily high."

Appellant acknowledges the diagnosis of bipolar disorder but testified that he believes that it is incorrect. He testified that he has been beaten up by law enforcement while in custody, but that, although he believes that he is being targeted and harassed by corrupt police, he has no desire to obtain a gun or to kill people. When asked by an examiner at the hearing whether he had an intention to harm law enforcement officers, appellant testified, "Not me doing harm to them, God providing retribution to them." He later elaborated, "I make the distinction of what I think should happen and what I'm going to do. And I am not authorized to use force."

The trial court found that, because of his "extremely high IQ," appellant might be able to carry out a plan to obtain weapons. The trial court found that appellant's threats to police and bank personnel, as well as his articulated plans—no matter how unrealistic—to kill or incite others to kill police, made him a danger to others and to himself.

Under ORS 426.130(1)(a), a person may be involuntarily committed only upon proof, by clear and convincing evidence, that the person has a mental illness. A person has a mental illness if, because of a mental disorder, the person is a danger "to self or others." ORS 426.005(1)(f)(A). At the hearing, appellant disputed that he has bipolar disorder. On appeal, as noted, appellant does not dispute that he has a mental disorder. He contends, however, that he is not a danger to others because, although he has made verbal threats, there is no evidence that he intended to or could carry them out, and he has never been violent.

As we recently said in *State v. E. J. J.*, 308 Or App 603, 612, 479 P3d 1073 (2021):

> "A person is 'dangerous to others' for purposes of ORS 426.005(1)(f)(A) if his 'mental disorder makes [the person] highly likely to engage in future violence toward others, absent commitment.' *State v. S. E. R.*, 297 Or App 121, 122, 441 P3d 254 (2019). That determination is based on the

person's 'condition at the time of the hearing as understood in the context of his history.' *State v. J. K.*, 177 Or App 373, 377, 34 P3d 739 (2001). Further, conclusions about appellant's dangerousness based on conjecture are not enough; '[a]ctual future violence must be highly likely.' *State v. T. M.*, 296 Or App 703, 709, 437 P3d 1197 (2019)."

In our review of the trial court's determination, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome. *State v. M. J. F.*, 306 Or App 544, 545, 473 P3d 1141 (2020). The question here, under the clear-and-convincing standard of proof, is whether a rational factfinder could have found that it was highly probable that appellant was a danger to others because of a mental disorder. *See State v. S. A. R.*, 308 Or App 365, 366, 479 P3d 618 (2021) (stating test).

Although there is no evidence that appellant has ever engaged in violence toward others or threatened immediate harm, we conclude that the evidence was sufficient to allow the trial court to find that it was highly probable that, at the time of the hearing, appellant posed a danger to others. Acts of violence are not required to establish that a person is dangerous; verbal threats may be sufficient, if the evidence provides a foundation for predicting future violent behavior. *State v. J. G.*, 302 Or App 97, 101 n 3, 458 P3d 721 (2020); *State v. Bodell*, 120 Or App 548, 550, 853 P2d 841 (1993). Here, that evidence was present. Three witnesses and two examiners testified that, based on their assessments of appellant's mental health and his recent behaviors and threats, they believed that he was escalating toward violence. Those opinions were based on appellant's increased aggressive and belligerent behaviors and verbal threats, his attempt to enter a gun show to purchase ammunition, his potential ability to obtain weapons, and the fact that appellant had made several threats to kill law enforcement personnel, including one in-person threat to an individual police officer, which, together, the trial court found, "moved this from a just bluster to actively taking steps to carry out what may be a delusional plan." We conclude that that evidence is sufficient to allow the factfinder to find, by

clear and convincing evidence, that the requisite degree of danger to others had been established. In light of our conclusion, we need not address appellant's contention that the trial court erred in determining that he was also a danger to himself.

ORS 436.130(1)(A)(a) provides that, if the court determines that the person is a person with a mental illness, the court shall nonetheless

"order the release of the person and dismiss the case if:

"(i)   The person is willing and able to participate in treatment on a voluntary basis; and

"(ii)   The court finds that the person will probably do so."

It is the person's burden to establish by a preponderance of the evidence that the person is willing and able to participate in treatment on a voluntary basis. *State v. M. J. M.*, 301 Or App 638, 641, 456 P3d 363 (2020). Appellant testified that he was previously enrolled in and plans to attend an intensive out-patient treatment program when he is released from the hospital and that he would take medication if a physician was willing to take into account his past adverse reactions to medication. Despite that testimony, the trial court found that appellant was "unwilling or unable to treat in the community," "based on his attitude towards the treatment that he's received here and his willingness to take meds, and only those meds which he has outlined are hemp and CBD, when in fact he's unwilling—he disregards all medical advice."

Appellant contends on appeal that his testimony established that he was willing to engage in outpatient treatment and that there is no evidence to the contrary. But the trial court was entitled to disbelieve appellant's testimony, *M. J. M.*, 301 Or App at 641, and there was evidence from which the trial court could find that, despite appellant's testimony, he was "unwilling or unable" to receive treatment voluntarily. Appellant believed that he had been misdiagnosed with bipolar disorder and that conventional medications had not been helpful. He had declined to take medication at the hospital. We conclude that the trial court

could find, from that evidence, that appellant was unwilling or unable to receive treatment voluntarily.

Affirmed.