No. 181 March 20, 2024 551

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of J. R. S. G.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

J. R. S. G.,
*Appellant.*

Deschutes County Circuit Court
22CC04349; A179343

Owyhee Weikel-Magden, Judge.

Submitted February 2, 2024.

Christopher J. O'Conner and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert A. Koch, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed.

**PAGÁN, J.**

Appellant challenges a circuit court judgment that found him to be a person with mental illness as defined by ORS 426.005(1)(f), committing him to the custody of Oregon Health Authority (OHA) and prohibiting purchase or possession of a firearm. ORS 426.130(1)(a)(C), (D). Appellant assigns error to the trial court's finding that he was a danger to others due to his mental disorder at the time of the hearing. Appellant argues that his aggressive behavior and violent act in the hospital were in response to confinement rather than a result of his mental disorder, and his negative fixation on the LGBTQ community does not form the basis for a prediction that future violence is highly likely. We agree with appellant that the evidence of his behavior in the hospital and vague threats toward a particular community were insufficient to conclude he was a danger to others. Accordingly, we reverse.

We review civil commitment cases for legal error. *State v. K. M.*, 314 Or App 586, 587, 496 P3d 1099 (2021). Pertinent to this case, the state must show by clear and convincing evidence "that actual future violence is highly likely" to demonstrate someone is a danger to others. *Id.* at 592. A single violent act cannot establish that someone is a danger to others if anything indicates it was an isolated incident. *State v. T. M.*, 296 Or App 703, 709, 437 P3d 1197 (2019). However, evidence of actual violence is unnecessary to establish that someone is a danger to others if other conduct in their recent history "clearly form[s] a foundation for predicting future dangerousness." *State v. L. R.*, 283 Or App 618, 625, 391 P3d 880 (2017) (quoting *State v. M. A.*, 276 Or App 624, 629, 371 P3d 495 (2016)). When relying on threats or other nonviolent conduct, the state "will generally have to provide evidence that shows that the appellant's threats of future violence are accompanied by an overt act demonstrating an intention and ability to carry out the threats or other circumstances indicating that actual future violence is highly likely." *Id.*

The state argues that evidence of appellant's aggressive behavior in the hospital,[1] comments about the

---

[1] While hospitalized, appellant spit at or on several staff, threatened one staff member directly while he was in isolation, vaguely threatened anyone who

LGBTQ community, and biting a technician's thumb when he was placing a bag over appellant's head was sufficient for a rational trier of fact to conclude appellant was a danger to others. The state relies on testimony from two investigators and appellant's psychiatrist asserting that appellant would very likely return to his antagonizing behavior of spitting and making vague threats that he exhibited when first entering the hospital, even though he was well behaved leading up to and during the hearing.

We have found previously that someone was not a danger to others when the only violent act was a response to or resisting confinement in the hospital setting. *See State v. J. G.*, 302 Or App 97, 102, 458 P3d 721 (2020) (holding that punching another patient in the back and being argumentative and verbally aggressive was not enough to infer that future violence was highly likely); *State v. S. E. R.*, 297 Or App 121, 124, 441 P3d 254 (2019) (concluding that kicking a nurse while resisting restraint in the hospital and threatening to slit the throat of another nurse was not sufficient to infer that the appellant was a danger to others outside the hospital setting); *State v. S. R. J.*, 281 Or App 741, 754-55, 386 P3d 99 (2016) (holding that kicking a security guard while he restrained the appellant in the hospital was "insufficient to clearly form the foundation for a prediction of future dangerousness," even though the appellant displayed other aggressive behavior while hospitalized (internal quotations omitted)); *State v. A. M. R.*, 236 Or App 186, 192, 235 P3d 720 (2010) (concluding that kicking, spitting, and biting while resisting arrest was insufficient to form a foundation to predict future violence). While fact matching in civil commitment cases is not always useful, *State v. T. T.*, 293 Or App 376, 384, 428 P3d 921, *rev den*, 364 Or 209 (2018), we agree with appellant that, similar to *S. E. R.*, the violence demonstrated and threats made in the hospital were not enough to conclude that future violence was highly likely outside the hospital setting. *S. E. R.*, 297 Or App at 124.

---

told him he needed to quit smoking, and was periodically agitated, raising his voice or banging on the wall in isolation.

Here, however, the state offered testimony from appellant's psychiatrist and two investigators.[2] The three witnesses all agreed that appellant would revert back to his aggressive behavior—spitting and making vague threats—that he exhibited just before his hospitalization and during the first few days of his hold. That said, we have held that "verbal threats of violence do not satisfy the future danger-ousness requirement if they are not accompanied by any overt act to follow through with the threat or if they are not made under circumstances that make actual future violence highly likely." *State v. R. H.*, 212 Or App 479, 484-85, 157 P3d 1286 (2007). While appellant endorsed anti-LGBTQ rhetoric, he also told staff and testified that he did not want to harm anyone. Without an overt act, evidence of his fixation on religious anti-LGBTQ beliefs is not sufficient to infer that actual future violence is highly likely. Additionally, no evidence was provided to suggest that his spitting was an indicator of future violent behavior.

Because the facts that the trial court relied on were insufficient to infer that appellant was a danger to others outside the hospital setting,[3] the trial court erred when it committed appellant to the custody of OHA under ORS 426.130(1)(a)(C).

Reversed.

---

[2] In *S. E. R.*, we found that contributing to the conclusion that appellant was not a danger to others was the lack of any psychiatric testimony "indicating how appellant's conduct inside the hospital was predictive of her conduct outside of it." 297 Or App at 125.

[3] *See State v. J. W. B.*, 312 Or App 549, 551, 492 P3d 142 (2021) (holding that evidence of appellant resisting restraints and making verbal threats, without more evidence of physical aggression, was insufficient to infer that actual future violence was highly likely); *J. G.*, 302 Or App at 102; *S. E. R.*, 297 Or App at 124; *State v. G. A. K.*, 281 Or App 815, 821, 384 P3d 555 (2016) (holding that "vague threats, in the absence of any overt act to carry them out, and in the absence of any overt violent act, are insufficient to establish that it is highly likely that appellant would engage in actual future violence"); *S. R. J.*, 281 Or App at 754-55; *A. M. R.*, 236 Or App at 192.