620 July 3, 2024 No. 467

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of N. R.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

N. R.,
*Appellant.*

Multnomah County Circuit Court
23CC01900; A181259

Benjamin P. O'Glasser, Judge.

Argued and submitted May 23, 2024.

Christopher J. O'Connor argued the cause for appellant. Also on the brief was Multnomah Defenders, Inc.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Appellant appeals a judgment involuntarily committing her to the custody of the Oregon Health Authority (OHA) for up to 180 days and prohibiting her from possessing firearms, ORS 426.130, based on the trial court's finding that, as a result of a mental illness, she is a danger to herself and unable to provide for her basic needs. *See* ORS 426.005(1)(f)(A), (B). Appellant raises two assignments of error. First, appellant contends that the trial court erred when it violated protections afforded to appellant under ORS chapter 426 as a person facing civil commitment. Although appellant did not preserve those issues, she contends that they amount to reversible plain error. Second, appellant contends that the evidence was insufficient to demonstrate that she had a mental disorder, and because of her mental disorder, she presents a danger to herself and is unable to provide for her basic needs. For the reasons that follow, we affirm.

*Procedural Errors.* On March 29, appellant was admitted to the hospital on an emergency mental health hold pursuant to ORS 426.232(1)(a). Appellant received a citation on April 4 at 11:15 a.m., which advised appellant of the right to counsel. The commitment hearing was held on April 5 at 10:30 a.m. Appellant's counsel and the examiner were present at the start of the commitment hearing, but the trial court signed an order appointing the examiner and legal counsel at 10:42 a.m. that same day (after the commitment hearing began). The order stated that counsel was "appointed as of April 4, 2023."

Appellant contends that the state and trial court failed to strictly comply with the statutory procedures outlined in ORS chapter 426, and the proceeding was fundamentally unfair in violation of appellant's due process rights. Specifically, appellant asserts the following errors in procedure—(1) that appellant was not informed of the right to counsel and not given counsel at the appropriate time; (2) that medical staff did not warn appellant about observation; and (3) that the examiner did not conduct his examination in compliance with the statutes and administrative rules.

Appellant acknowledges that she did not preserve the error, and she requests that we review for plain error

whether the trial court erred in conducting the commitment hearing and committing appellant despite these procedural errors. ORAP 5.45(1) (allowing discretionary review of plain errors). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). It is a matter of discretion whether we will correct a plain error. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

First, appellant argues that medical professionals at the hospital did not inform her of her right to counsel in violation of ORS 426.234(1)(a), and she argues that the court did not appoint counsel at the appropriate time in violation of ORS 426.100(3). ORS 426.234(1)(a) requires that a medical professional at the facility inform a person of her right to representation, but it does not require that the professional document that information. In this case, we would have to go outside the record to accept appellant's argument that she was not notified by medical staff about her right to representation, because there was no evidence presented that appellant was not notified of her right to counsel. Thus, this alleged error does not qualify for plain error review.

Regarding the timing of the appointment of counsel, ORS 426.100(3)(e) provides that a person's right "to have an attorney appointed may be exercised as soon as reasonably possible." Appellant argues that, by appointing counsel the day of the commitment hearing, the trial court plainly erred by not appointing counsel "as soon as reasonably possible." However, we conclude that it is not obvious that ORS 426.100(3)(e) required the trial court to appoint counsel earlier than it did. The statute does not impose a specific timeframe for the appointment of counsel, and the phrasing of the provision suggests that the statute may require some affirmative action by the detained person to "exercise" the right to counsel. Here, there is no evidence that appellant attempted to exercise her right to counsel before the court appointed counsel. Under the circumstances, it is not plain that the trial court's appointment process was erroneous under ORS 426.100(3)(e).

Second, appellant argues that the trial court plainly erred in holding the commitment hearing and committing appellant when there was no evidence that appellant was warned about observation by medical staff pursuant to ORS 426.123(1). Assuming that those warnings were not given, we conclude that the trial court did not plainly err in holding the commitment hearing and committing appellant. *See State v. R. C.*, 298 Or App 280, 281, 443 P3d 742 (2019) ("[A] violation of ORS 426.123 is not grounds to dismiss a commitment proceeding.").

Third, appellant argues that the trial court plainly erred when it conducted the commitment hearing and committed appellant despite the examiner's noncompliance with several statutory and administrative requirements. We have reviewed those arguments and conclude that, with one exception, it is not obvious or apparent on the face of the record that the examiner's prehearing preparation, examination of appellant during the hearing, or report to the court violated the requirements of ORS chapter 426 or related administrative rules.

The exception is that we agree with appellant that the examiner's report did not comply with the requirements of ORS 426.120(2)(a), because it did not "include a recommendation as to the type of treatment facility best calculated to help the person recover from mental illness." However, assuming without deciding that it was error for the trial court to conduct the hearing absent that information, we decline to exercise our discretion to correct it because, as the state points out, the examiner's omission of a recommendation would not have affected the trial court's decision to commit appellant.

*Sufficiency of the Evidence.* In her second assignment of error, appellant argues that the evidence was insufficient to determine that at the time of the hearing, appellant was a person with a mental disorder, and that because of her mental disorder, appellant was a danger to herself or unable to provide for her basic needs. In reviewing for sufficiency of the evidence, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition

and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. T. Y.*, 285 Or App 21, 22, 396 P3d 986 (2017) (internal quotation marks and citation omitted).

A court may order that a person be involuntarily committed if, "based upon clear and convincing evidence," the court determines that the person is a "person with mental illness" and is unwilling or unable to participate in voluntary treatment. ORS 426.130(1). The phrase "person with mental illness" is defined in ORS 426.005(1)(f)(A)-(B) and includes someone who because of a mental disorder is "[d]angerous to self or others" or is "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm."

In this case, the trial court had sufficient evidence to determine that appellant had a mental disorder. Appellant argues that evidence at trial indicated that her behavior could be attributed to substance abuse—rather than a mental disorder—and the testifying psychiatrist did not completely rule out that possibility. However, the psychiatrist testified that bipolar disorder was more likely than substance abuse as explaining appellant's behavior because her symptoms became worse over the course of her hospitalization. Also, the examiner agreed that bipolar disorder was the likely diagnosis. That evidence provided the trial court sufficient evidence to determine appellant had a mental disorder.

The trial court also had sufficient evidence that appellant was a danger to herself due to her mental disorder: Appellant was hospitalized after drinking a cleaning product, her mental condition worsened during her hospitalization, and she did not have insight into her mental disorder such that the court determined it was likely that if she were released, she would pursue ingesting harmful chemicals again. *See State v. M. J. F.*, 306 Or App 544, 546, 473 P3d 1141 (2020) (noting that a person is dangerous to self "if the person's mental disorder would cause him or her to engage in behavior that is likely to result in physical harm to [self] in the near term" (internal quotation marks and

citation omitted)). Although appellant only appeared dehydrated based on her lab results, the law did not require the trial court wait until appellant actually physically harms herself in order to determine that she was a danger to herself. *See State v. M. T.*, 308 Or App 448, 452, 479 P3d 541 (2021).

In addition, the trial court had sufficient evidence that, due to her mental disorder, appellant was unable to provide for her basic needs such that she was put in a non-speculative risk of serious harm. The trial court relied on evidence that, at the time of the hearing appellant responded to internal stimuli, which put her at risk for drinking harmful chemicals; appellant exhibited disorganized thinking and communication such that she would not be able to secure food or housing; appellant had poor hygiene, which could place her at risk for an infection; and appellant had no insight into her disorder such that she would not work with treatment providers on her mental health. *See* ORS 426.005(1)(f)(B) (defining a "person with a mental illness" as someone who, as a result of a mental disorder, is "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as necessary to avoid such harm"); *see also State v. M. A. E.*, 299 Or App 231, 239, 448 P3d 656 (2019) (defining "serious physical harm" as "bodily harm that is serious enough that a person who suffers that harm is unsafe in the absence of commitment, treatment, or other amelioration of the physical condition").

Affirmed.