Submitted September 1, 2020, affirmed February 3, 2021

In the Matter of S. S.,
a Person Alleged to have Mental Illness.
## STATE OF OREGON,
*Respondent,*

*v.*

## S. S.,
*Appellant.*

## Multnomah County Circuit Court
19CC04441; A172146

480 P3d 321

Appellant seeks reversal of an order involuntarily committing him to the Oregon Health Authority for up to 180 days, arguing that the record was legally insufficient for a rational factfinder to conclude that he suffers from a mental disorder such that he is a danger to himself. The state responds that the record contained evidence that appellant's impulsive and aggressive behavior nearly provoked others to use violence against him on multiple occasions in the recent past. *Held*: The record was sufficient to support the trial court's determination that appellant is dangerous to himself. The record contains evidence that appellant has consistently, persistently, and repeatedly put himself in harm's way, including one incident where he aggressively brandished a metal baseball bat at police officers, prompting one officer to draw his gun, and another where he nearly provoked a fistfight with his neighbor.

Affirmed.

Monica M. Herranz, Judge.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Appellant seeks reversal of an order involuntarily committing him to the Oregon Health Authority for up to 180 days. Because the record was legally sufficient to allow a rational factfinder to conclude that he suffered from a mental disorder that makes him dangerous to himself, we affirm.

Absent *de novo* review, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. M. J. F.*, 306 Or App 544, 545, 473 P3d 1141 (2020) (internal quotation marks omitted). Accepting those inferences in favor of the trial court's decision, we must determine "whether a rational factfinder *could* have found that it was highly probable" that appellant was a danger to himself or others because of a mental disorder. *Id.* at 549 (internal quotation marks omitted; emphasis added). "[W]hether the evidence is sufficient to support a determination that appellant is a danger to [self] is a question we review as a matter of law." *State v. T. Y.*, 285 Or App 21, 24, 396 P3d 986 (2017). We state the facts in light of that standard of review.

Appellant suffers from bipolar disorder marked by paranoia, impulsivity, and aggression. One of the manifestations of this disorder is that appellant frequently, repeatedly, and belligerently threatens those around him. When appellant acts this way, he presents as "out of control" and he appears to be "very meaningful" in the threats that he makes. A few examples of the many instances of this behavior in the record include racist slurs, sexist insults including threats to rape women and children, and specific and credible death threats against a behavioral health clinician and a judge with whom he attended Alcoholics Anonymous. When police came to his house following the death threats, appellant ran into his home and then emerged wielding a baseball bat, threatening to blow up his house by cutting the gas line. One of the officers drew his gun, but the other officer, who was familiar with appellant and his mental disorder, was able to defuse the situation. It took police several

days to take appellant into custody because of his aggressiveness and a fear that they could not do so without causing him injury. When police finally took him into custody, appellant broke his foot in the subsequent altercation, requiring surgery.

In the same time frame, appellant engaged in several other physical encounters. He threatened a mental health clinician repeatedly, eventually lunging at her and cutting himself on the fence that separated them. Appellant also repeatedly threatened to kill his neighbor and rape his neighbor's wife and the neighborhood children. On one occasion, he made as if he was going to punch his neighbor, which caused the neighbor to put his own fists up in preparation for a fight. Appellant then left, but he returned shortly thereafter to spit coffee on the neighbor's car, window, and screen door. While in the hospital, appellant's behavior continued in this manner, including multiple instances of using racist, sexist, and homophobic epithets to hospital staff and in voicemails he left for his neighbor, the police, and other individuals in the community. He required seclusion and several summons to hospital security, including the night before the hearing.

Recognizing that appellant was unable to control this behavior and "almost got shot" when officers visited his home, the trial court determined that appellant is likely "to put [himself] in harm's way" and is therefore a danger to self. Appellant acknowledges that he suffers from bipolar disorder but he contends—and the state disputes—that the evidence was insufficient to demonstrate that he poses a danger to himself.

Under Oregon law, a person may be involuntarily committed if the person is determined to be a "person with mental illness." ORS 426.130(1)(a)(C). A "person with mental illness" is someone who suffers from a "mental disorder" and, as a result of that disorder, is "[d]angerous to self ***." ORS 426.005(1)(f)(A). For purposes of ORS 426.005(1)(f)(A), a person is dangerous to self if "the person's mental disorder would cause him or her to engage in behavior that is likely to result in physical harm to [self] in the near term." *State v. B. B.*, 240 Or App 75, 82, 245 P3d 697 (2010) (internal

quotation marks omitted). The threat of "potential harm must be more than speculative." *T. Y.*, 285 Or App at 25 (internal quotation marks omitted).

We have previously observed that cases involving concerns that an appellant will put himself in "harm's way" highlight the application of these principles. *Id.* (quoting *B. B.*, 240 Or App at 83). That is so because "delusional or eccentric behavior, even if inherently risky, is not necessarily sufficient to warrant commitment." *Id.* at 26. And, an isolated incident—even one that risks serious harm—is insufficient to demonstrate dangerousness without indication that it is likely to recur. *See State v. T. W.*, 291 Or App 679, 687 n 4, 422 P3d 305 (2018) (although "serious" and carrying "a significant risk of harm," a single encounter with police that resulted in police using force against appellant 15 years prior is insufficient to demonstrate that appellant "presented a risk to himself or others at the time of the hearing"). In contrast, "a concrete risk of specific harm" is sufficient to demonstrate the risk of future violence. *State v. S. R. J.*, 281 Or App 741, 751, 386 P3d 99 (2016). From these cases, two criteria can be derived to evaluate whether an appellant's behavior that may put him in harm's way amounts to a danger to self: (1) the behavior must have caused or risked serious harm and (2) must be likely to recur.

A rational factfinder could conclude those criteria are met on this record. Appellant consistently, persistently, and repeatedly put himself in harm's way in a manner that created a nonspeculative risk of serious injury. The record contains numerous instances where appellant engaged in threatening and violent behavior, leading to several injuries and narrowly avoiding more. When police visited appellant's home, appellant aggressively brandished a metal baseball bat, causing an officer to draw his weapon. Police were unable to take appellant into custody, despite multiple attempts, because of a concern that his aggression and impulsive behavior would lead to his injury. The day police finally took him into custody, those concerns were realized when appellant broke his foot fleeing. Appellant also cut his arm when lunging at a mental health clinician and provoked a neighbor into making a fist in preparation for a

fight. Even after he was hospitalized, appellant has continued to make numerous threatening phone calls to his neighbor and police and has required security and seclusion in the hospital setting.

This behavior has already resulted in serious physical harm—a broken foot—and has narrowly averted more serious harm—getting shot. There is also sufficient evidence to conclude that this behavior will recur, given the volume and consistency of appellant's belligerence and threats both before and after his hospitalization. Because of the persistence and consistency of appellant's actions, a rational factfinder could conclude that his behavior creates a risk of serious physical harm and that the risk is likely to recur.

Affirmed.