No. 600　　　　November 15, 2023　　　　201

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of K. B.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

K. B.,
*Appellant.*

Washington County Circuit Court
21CC07209; A177733

Thomas A. Goldman, Judge pro tempore.

Submitted September 1, 2022.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this civil commitment proceeding, appellant seeks reversal of a judgment committing her to the Oregon Health Authority for a period not to exceed 180 days. Appellant does not dispute that she has a mental disorder; rather, she argues in a single assignment of error that the record was insufficient to conclude that she had a mental illness such that she was unable to provide for her basic needs. *See* ORS 426.130(1)(a)(C) (providing the conditions under which a court may order civil commitment of a "person with mental illness"); ORS 426.005(1)(f)(B) (defining a "[p]erson with mental illness" to include a person who, because of a "mental disorder," is "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm"). A person risks "serious physical harm" if there is a "nonspeculative threat that the person's inability to provide for basic needs means that the person will not safely survive without treatment." *State v. M. A. E.*, 299 Or App 231, 239, 448 P3d 656 (2019). As explained below, we conclude that there is sufficient evidence in the record to support the trial court's determination that appellant, if released on the day of the hearing, would have presented a nonspeculative risk of serious physical harm in the near future. Accordingly, we affirm.

Neither party has requested *de novo* review, and we conclude that this is not an "exceptional" case that warrants *de novo* review. *See* ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases."). Thus, we review the evidence in the record, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether the record was legally sufficient to permit that outcome. *State v. S. S.*, 309 Or App 131, 132, 480 P3d 321 (2021). Because the parties are familiar with the factual and procedural background, we do not set out those facts for this nonprecedential memorandum opinion.

We have reviewed the record and conclude that there is sufficient evidence to support the trial court's determination that, due to appellant's delusions and the weather conditions at the time of the hearing, "it is not speculation that she would not be able to seek appropriate shelter for herself in these weather conditions. And it does create an [imminent] threat." Briefly stated, the record contains evidence that appellant suffered from delusions that caused her to believe that she lived in a house in Hood River with a husband who was a doctor; however, appellant was not married and lived in an apartment in The Dalles. On the day of the hearing, the temperature was below freezing and there was snow and ice on the ground. Douglas, the treating psychiatrist, testified that appellant could get hypothermia in a matter of hours or less if appellant were to fail to seek shelter after her release because the weather was "life-threateningly" cold. Douglas, based on prior interactions with appellant, further testified, "And that's what I'm worried would be a danger to her, she would walk off into cold snowy weather, absolutely convinced that [her imaginary husband] was about to pick her up and take her to this home that she thinks they're going to live in, in Hood River." Douglas believed that appellant would not take steps to prevent hypothermia because "she would think that her husband, the doctor, was there. And if he wasn't within sight, he was going to be there in seconds. She's expecting him to drive up and pick her up and take her away." Although some of appellant's delusions improved after taking antipsychotic medications, on the day of the hearing she continued to have delusions about her imaginary husband picking her up to take her to a house in Hood River. In addition, appellant continued to tell Douglas that upon release she would refuse to go back to the apartment in The Dalles, claiming that the apartment burned down because of termites.

In short, there is sufficient evidence in the record for the trial court to have found that appellant, if released on the day of the hearing, would have been at a nonspeculative risk of serious physical harm in the near future. *See M. A. E.*, 299 Or App at 240 (recognizing that the risk of serious physical harm need not be immediate to support an involuntary commitment; rather, it is sufficient that the person's mental

disorder and the resulting lack of ability to provide for his, her, or their basic needs puts the person at risk of such harm in the near future).

Affirmed.